**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CITY OF HOUSTON** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION  4:10:CV:4545** |
| | § | |
| **AMERICAN TRAFFIC SOLUTIONS, INC.** | § | |

<u>**AMERICAN TRAFFIC SOLUTIONS, INC.'S ORIGINAL**
**ANSWER TO CITY OF HOUSTON'S FIRST AMENDED COMPLAINT AND**
**COUNTERCLAIM**</u>

American Traffic Solutions, Inc., by and through its attorneys of record, hereby files

its Original Answer to the First Amended Complaint filed by the City of Houston, as well as

its Counterclaim against the City, as follows:

**GENERAL OVERVIEW**

By this Answer and Counterclaim, ATS seeks to adjudicate certain fundamental

issues of police power which are vested in the City's elected officials to protect the public

safety of its citizenry.  More specifically, a Public Safety Program -- the City's Photo Red

Light Camera Enforcement System -- was passed and implemented in 2004 to protect

motorists, pedestrians and other members of the general public from the rampant running

of red lights, as well as to help limit the frequency and severity of accidents at intersections.

Since the inception of the City's Public Safety Program, countless lives have been saved and

the number of accidents has declined.   This is why so many supporters of the City's Public

Safety Program include first time responders, such as police, fire and emergency service

providers.  In a democracy, the duly-elected legislative representatives are empowered and

obligated to protect the safety of the general public through the exercise of its police

powers.  In turn, the people hold the ultimate authority to reelect or defeat elected officials

*City of Houston v. American Traffic Solutions, Inc.*  (4:10:CV:4545)
ATS's Answer and Counterclaim and Request for Emergency Relief

1

in contested elections in accordance with Texas law.  At the local level, the power to effect public safety programs through the exercise of its police powers is vested in the Houston City Council.  Accordingly, the use of the City Charter amendment process to repeal public safety programs enacted by the City Council is not permitted.  Alternatively, to the extent the City's Charter does allow the public to repeal certain ordinances, that power must be exercised on a timely basis in order to be effective.  Proposition 3 was not timely sought, so the City should not have called a Special Election and placed this issue on the ballot. Finally, the City's determination to terminate this Public Safety Program was not in accordance with the terms of the agreement between the parties, nor was it in keeping with the constitutional prohibition of the impairment of contracts.  Accordingly, ATS requests the court to preserve the status quo by enjoining the City from terminating the Public Safety Program or otherwise implementing Proposition 3, pending an adjudication of these fundamental issues of law affecting not only these parties, but the general public at large.

## I. THE PARTIES

1.      With respect to paragraph 1 of the City's first amended complaint, ATS admits that Houston is a Texas home-rule municipal corporation, situated primarily in Harris County, Texas. [1]

2.      With respect to paragraph 2 of the City's first amended complaint, ATS admits that it is a Kansas corporation, doing business in Texas, and may be served with this

---

[1] ATS joins in the City of Houston's request for the Court to take judicial notice of the City's published Charter and Houston's status thereunder as a Texas home-rule city.

*City of Houston v. American Traffic Solutions, Inc.* (4:10:CV:4545)
ATS's Answer and Counterclaim and Request for Emergency Relief

suit by serving its agent for service of process, C.T. Corporation System, 350 N. St. Paul St., Ste. 2900, Dallas, Texas 75201-4234.  ATS admits that it was provided a copy of the City's original complaint and had not previously filed an answer.

## II. JURISDICTION AND VENUE

3.     With respect to paragraph 3 of the City's first amended complaint, ATS admits that diversity of citizenship exists between the parties and the value of the right to be protected or the extent of the injury to be prevented in this matter exceeds $75,000.00. ATS further admits that this court has both subject matter and personal jurisdiction over the parties and this dispute.

4.     With respect to paragraph 4 of the City's first amended complaint, ATS admits that venue is proper in this court pursuant to 28 U.S.C. § 1391(a)(2) & (b)(2), because the events giving rise to the City's claims occurred in the Southern District of Texas.

## III. INTRODUCTION

5.     With respect to paragraph 5 of the City's first amended complaint, ATS admits that the City implemented the Public Safety Program in 2004.  ATS admits that it entered into an agreement with the City for operation and administration of the Public Safety Program via Ordinance 2006-567.  ATS admits that the agreement was amended by the Houston City Council via Ordinance 2009-461.   ATS denies that the operative effect of the November 2, 2010 Special Election was to immediately prohibit the continued operation of the Public Safety Program.

6.     With respect to paragraph 6 of the City's first amended complaint, the averments contained therein are not factual and thus, no response is required.  To the

*City of Houston v. American Traffic Solutions, Inc.*   (4:10:CV:4545)
ATS's Answer and Counterclaim and Request for Emergency Relief

3

extent a response is required to any factual averments contained therein, ATS denies those assertions. More specifically, the Houston City Charter contains only one provision addressing the statutory authority of the public to repeal an existing ordinance: more commonly known as the power of referendum.[2] The referendum power, however, comes with certain restrictions, most notably, a thirty-day window for citizens to try to undo a decision of their elected representatives. Pursuant to the City's Charter - akin to the City of Houston's Constitution - the ordinance(s) implementing the City's Public Safety Program was no longer eligible as a referendum item as of January 21, 2005. The City failed to follow its own statutory limitation governing the authority to order referendum elections when it permitted Proposition 3 to be placed on the ballot following the elapse of the thirty-day window. The election was ordered without appropriate statutory authority. The City contends, however, that Chapter 9 of the Texas Local Government Code imposed a ministerial obligation upon the city council to order an election on the Public Safety Program, as a result of the referendum author's designation of the proposal as a "charter amendment," without any consideration of the proposed amendment's direct conflict with the City's Charter provision governing referendum. For the reasons outlined below, the City is without authority to terminate the agreement with ATS. Alternatively, if such ability

---

[2] See *Article VII-b.§ 3*, Houston City Charter; the power of "referendum" describes the ability of the public to propose and vote upon the immediate repeal of an ordinance adopted within the thirty-day window preceding submission of a valid referendum petition. The power of "initiative" describes the ability of the public to propose "new" legislation and vote upon adoption of the same. By way of example, the November 2010 "Prop. 1" Charter Amendment addressed wholly new policy proposals, whereas Prop. 3's purported ban on red light cameras involved an City Ordinance which was passed and adopted nearly six years earlier.

remains in the agreement, the sufficient time has not elapsed for the City to terminate the agreement, or the City has failed to terminate under the terms of the agreement. Finally, the U.S. and Texas Constitutions' prohibitions against the passage of laws impairing the obligation of contracts renders the results of the November 2, 2010 election void.

## IV. FACTUAL BACKGROUND

**A.      The Ordinance**

7.      With respect to paragraph 7 of the City's first amended complaint, ATS admits that On December 21, 2004, Houston's City Council adopted an ordinance authorizing the red light camera ordinance.

**B.      The Agreement & Amendment**

8.      With respect to paragraph 8 of the City's first amended complaint, ATS admits that on May 31, 2006, by Ordinance No. 2006-567, Houston's City Council approved an agreement between the City and ATS for a red light camera enforcement system and services.

**C.      The Petition**

9.      With respect to paragraph 9 of the City's first amended complaint, ATS admits that the only process for the public to propose the repeal of an existing ordinance, the referendum process, is set forth in Article VII-b. §3 of the Houston City Charter. ATS denies that the petition that resulted in Proposition No. 3 to purportedly amend the Houston City Charter was submitted pursuant to Chapter 9 of the Texas Local Government Code. ATS is without sufficient information to admit or deny whether the Houston City Secretary made a legally sufficient certification of the petition as set forth in paragraph 9 of

5

*City of Houston v. American Traffic Solutions, Inc.*   (4:10:CV:4545)
ATS's Answer and Counterclaim and Request for Emergency Relief

the amended complaint.[3] ATS admits the Houston City Council passed an ordinance placing the measure on the November 2010 ballot.

**D.     The November 2, 2010, Special Election**

10.     With respect to paragraph 10 of the City's first amended complaint, and without admitting that the actions set forth therein were done with appropriate authority, ATS admits that the Houston City Council canvassed the November 2010 Special Election results on November 15, 2010.  ATS denies that the operative effect of the canvass for Proposition No. 3 was to amend the Houston City Charter.

**E.     The Controversy**

11.     With respect to paragraph 11 of the City's first amended complaint, ATS admits that on November 10, 2010, the City of Houston provided written notice to ATS of its intent to canvass the results of the November 2, 2010 election and take necessary contractual actions subsequent thereto.  ATS admits that it disagreed with the City's assertion that the agreement was subject to immediate termination.  ATS denies that the City has properly terminated the agreement between the City and ATS.

**V. DEFENDANT'S ANSWER TO DECLARATORY JUDGMENT
CAUSE OF ACTION SUBJECT TO AFFIRMATIVE DEFENSES**

Under Federal Rule of Civil Procedure 8(b), ATS denies each and every allegation contained in the City's first amended complaint except for those expressly admitted.  ATS incorporates the foregoing responses by reference as if fully set forth below.

---

[3] Notably, the Mayor Pro Tem of the Houston City Council raised a procedural point of order prior to the certification of the Anti-Camera Petition.  The point of order, which highlighted the City Secretary's failure to recite the petition's text prior to discussion, was rejected by the Mayor.

*City of Houston v. American Traffic Solutions, Inc.*   (4:10:CV:4545)
ATS's Answer and Counterclaim and Request for Emergency Relief

12.     With respect to paragraph 12 of the City's first amended complaint, the averments contained therein are not factual and thus, no response is required.  To the extent a response is required to any factual averments in paragraph 12, ATS denies those assertions.

13.     With respect to paragraph 13 of the City's first amended complaint, the averments contained therein are legal conclusions to which no response is required.  To the extent a response is required to any factual averments contained in paragraph 13, ATS denies those assertions.

14.     With respect to paragraph 14 of the City's first amended complaint, the averments contained therein are legal conclusions to which no response is required.  To the extent a response is required to any factual averments contained in paragraph 14, ATS denies those assertions.

15.     With respect to paragraph 15 of the City's first amended complaint, the averments contained therein are not factual and thus, no response is required.  To the extent a response is required to any factual averments contained in either incorporated pleadings, ATS denies those assertions.

16.     With respect to paragraph 16 of the City's first amended complaint, the averments contained therein are not factual and thus, no response is required.  To the extent a response is required to any factual averments contained in either incorporated pleadings, ATS denies those assertions.

## VI.  FIRST AFFIRMATIVE DEFENSE

## (Failure to Comply With Conditions Precedent)

17.    ATS alleges that the City has failed to comply with conditions precedent prior to termination of the amended agreement between the City and ATS.  Specifically, the amended agreement removed all termination options available to the City (except for breach and default), and thus, the City failed to complete the remaining term of the agreement, which runs through May 27, 2014.  Alternatively, the City's termination for convenience option has yet to mature under the contact, and thus, the City's termination is premature.  Pleading further in the alternative, the City failed to properly provide termination notice set forth within the agreement.

## VII.  SECOND AFFIRMATIVE DEFENSE

## (Constitutional Prohibitions Against Impairment of Contracts)

18.    Both the U.S. Constitution and the Texas Constitution prohibit legislation impairing the obligation of contracts.  The purported Charter Amendment cannot validly be upheld if doing so would in any way impair the City's ability to fulfill its pre-existing contractual obligations to ATS.

## VIII.  THIRD AFFIRMATIVE DEFENSE

## (Charter Amendment Election Was Ordered Without Authority)

19.    The Houston City Charter contains only one provision addressing the ability of the public to repeal an existing ordinance: the power of referendum.  The power of referendum does not apply to public safety.  Pleading in the alternative, and assuming that the power of referendum does apply to the facts of this case, the referendum power is nevertheless not available to repeal the City's Public Safety Program because such effort

*City of Houston v. American Traffic Solutions, Inc.*  (4:10:CV:4545)
ATS's Answer and Counterclaim and Request for Emergency Relief

8

was untimely under the City's Charter. The City's Charter mandates a thirty-day window for citizens to undo a decision of their elected representatives. The only opportunity for the public to propose the repeal of the City's Public Safety Program expired when a referendum petition was not submitted by January 21, 2005 (30 days after the date the City Council adopted the Ordinance implementing the Public Safety Program). The City violated the law when it permitted Proposition 3 to be placed on the ballot to repeal a public safety program. The City violated the law when it permitted Proposition 3 to be placed on the ballot outside of the statutory thirty-day period for referendum. Accordingly, the November 2, 2010 Special Election on Proposition No. 3 was ordered without appropriate statutory authority.

## IX. RESERVATION OF ADDITIONAL AFFIRMATIVE DEFENSES

20.     ATS reserves the right to assert additional affirmative defenses in the event that discovery or other analysis indicates that additional affirmative defenses are appropriate. ATS reserves and does not waive any additional defenses that need not be pled as affirmative defenses.

21.     All allegations in the amended complaint, whether explicit or implicit, are denied to the extent those allegations are not expressly admitted herein.

## X. RELIEF REQUESTED IN PLAINTIFF'S FIRST AMENDED COMPLAINT

22.     With respect to the unnumbered paragraph of the City's first amended complaint entitled, "Relief Requested," ATS admits that the City seeks declaratory relief under the Federal Declaratory Judgment Act. ATS admits the City seeks an order from this court declaring that the ordinances implementing the City's Public Safety Program, as well as those approving the related agreement and amendment, were rendered void by virtue of

9

*City of Houston v. American Traffic Solutions, Inc.* (4:10:CV:4545)
ATS's Answer and Counterclaim and Request for Emergency Relief

the Special Election rejection of Proposition No. 3, but denies that the City is entitled to such relief. Defendant admits the City seeks an Order from this court articulating the continuing rights and liabilities of the parties under the agreement and amendment, but ATS denies that the City is entitled to such relief. To the extent that the City seeks other relief including costs and/or attorney's fees, ATS denies the City's entitlement to such relief.

## XI. COUNTERCLAIMS

ATS, by and through its undersigned counsel, hereby brings the following counterclaims against the City as follows:

## XII. THE PARTIES

1.      Defendant and Counterclaimant ATS is a business organized and existing under the laws of the state of Kansas.

2.      Plaintiff-Counterclaim Defendant the City of Houston has alleged in Paragraph 1 of the Amended Complaint that it is a Texas home-rule municipal corporation located primarily in Harris County, Texas.

## XIII. JURISDICTION AND VENUE

3.      There is diversity of citizenship between the parties and the value of the right to be protected or the extent of the injury to be prevented in this matter exceeds $75,000.00. Accordingly, the court has jurisdiction over the claims in this suit brought pursuant to 28 U.S.C. § 1332(a)(1). Additionally, in accordance with Rule 57, FED. R. CIV. PROC. and 28 U.S.C. §§ 2201-2202, this is an action for declaratory judgment under the laws of the United States for the purpose of determining questions in actual controversy between the parties. This court retains pendent jurisdiction over the state claims asserted

*City of Houston v. American Traffic Solutions, Inc.* (4:10:CV:4545)
ATS's Answer and Counterclaim and Request for Emergency Relief

10

herein due to the common nucleus of operative facts that necessarily must be addressed prior to the court's contractual analysis.

4.     The City has alleged in paragraph 4 of the amended complaint that venue is proper in this court pursuant to 28 U.S.C. § 1391(a)(2) & (b)(2), because the events giving rise to these claims occurred in this district.

5.     There is an actual controversy between ATS and the City regarding the validity of the November 2, 2010 Special Election on Proposition Number 3.

## XIV. INTRODUCTION

6.     In 1913, the Houston City Charter was amended to require that referendum petitions be brought to the City Council within thirty days of the date of passage of the ordinance sought to be repealed.  The power of referendum is inapplicable to repeal certain ordinances such as the City's Public Safety Program.  In addition, opponents of the City's Public Safety Program failed to submit a timely referendum petition within thirty days of the Council's approval of an ordinance adopting and implementing the City's Public Safety Program.  The Proposition 3 sponsors were time barred from bringing an action to repeal the City's Public Safety Program.  The opponents of the City's Public Safety Program knew they were out of time, knew they were unable to submit a valid referendum petition, and thus attempted to circumvent the city charter by proposing a "new" charter amendment in a manner directly conflicting with the existing language governing the power of referendum.  However, the general laws of the State of Texas governing the procedures for proposing a Charter Amendment cannot be used to circumvent existing Charter provisions. The Special Election for Proposition No. 3 held on November 2, 2010 was ordered improperly, in a manner inconsistent with the Houston City Charter, without statutory

11

authority, and thus was void before it ever appeared on the ballot. Regardless of whether the election was validly called, the U.S. and Texas Constitutions' prohibition against the adoption of laws impairing the obligation of contracts render the election's results impossible to carry out. Finally, the City's Public Safety Program was not properly terminated and the City's obligations under the agreement remain in full force and effect.

## XV. FACTS

**A.     The Election Was Not Valid**

7.     The City is incorporated under the laws of the State of Texas, and operates as a home-rule municipality pursuant to the provisions of the City of Houston City Charter.

8.     The Houston City Charter sets forth the powers of referendum as previously approved by City voters in Article VII-b, § 3 of the Charter. The Charter provides:

> "If prior to the date when an ordinance or resolution shall take effect, or within thirty (30) days after the publication of same by the City Council of any ordinance **which is subject to a Referendum**, a petition signed by an appropriate number of qualified voters may be filed with the City requesting that such ordinance either be repealed or submitted to a vote of the electors."[4]

9.     On December 21, 2004, the City adopted and enacted City Ordinance No. 04-1312, an ordinance that amended the City's traffic code to authorize implementation of the City's Public Safety Program. The power of referendum in the City's Charter only applies to

---

[4] See *Article VII-b.§ 3*, Houston City Charter (emphasis added).

an appropriate subject of a referendum, which does not including public safety programs.[5] Alternatively, no referendum petitions were submitted seeking to repeal Ordinance 04-1312. The Public Safety Program was later amended via Ordinance No. 2006-566 on May 31, 2006. No referendum petitions were submitted seeking to repeal Ordinance No. 2006-566. The Public Safety Program was later amended via Ordinance No. 2007-464 on April 11, 2007. No referendum petitions were submitted seeking to repeal Ordinance No. 2007-464. The Public Safety Program was later amended via Ordinance No. 2007-985 on August 29, 2007. No referendum petitions were submitted seeking to repeal Ordinance No. 2007-985. The Public Safety Program was most recently amended via Ordinance No. 2008-27 on January 9, 2008. No referendum petitions were submitted seeking to repeal Ordinance No. 2008-27.

10.     In 2006, the City contracted with ATS to install equipment and assist with administering the Public Safety Program. The agreement between ATS and the City was approved via Ordinance No. 2006-567 on May 31, 2006. No referendum petition was submitted seeking to repeal Ordinance No. 2006-567. The agreement between ATS and the City was amended via Ordinance No. 2009-0461 on May 27, 2009. No referendum petition was submitted seeking to repeal Ordinance No. 2009-0461.

11.     In August 2010, a purported Charter Amendment Petition was submitted to the City seeking to eliminate the City's Public Safety Program. However, as stated previously, the power of referendum does not apply to public safety programs.

---

[5] *Article II, Section 2* of the City Charter provides as follows: "The City Council shall have power to enact and to enforce all ordinances necessary to protect life, health and property." See also *Glass v. Smith*, 150 Tex. 632, 244 S.W.2d 645 (Tex. 1951).

*City of Houston v. American Traffic Solutions, Inc.*   (4:10:CV:4545)
ATS's Answer and Counterclaim and Request for Emergency Relief

Alternatively, the timeframe under which members of the public could propose the repeal of the existing Public Safety Program had passed on January 21, 2005; the August 2010 Petition was submitted nearly six years late.  The Public Safety Program could only be repealed by a majority vote of the City's governing body, and even then, the City would be bound to the terms of the agreement regarding termination, including the contractual damages associated with any such decision to eliminate the program.  Nevertheless, on August 24, 2010, the Houston City Council voted to call a Special Election for the purpose of determining whether the Public Safety Program would be continued or repealed.  After publicly acknowledging concerns with whether the proposed Petition was validly submitted and could survive a legal challenge, the Houston City Attorney advised the governing body that they had a ministerial duty to accept the Petition for placement on the November 2010 ballot.  The City Council was advised that the courts would undoubtedly be asked to determine if the Petition was timely submitted; and despite their stated misgivings, the City Council voted to order the Special Election.  A nearly identical situation occurred in late-2009 in the City of College Station.  Despite being faced with valid questions regarding the timeliness of a Petition submitted to the City seeking to ban the city's automated traffic signal enforcement program, the Council ultimately ordered an election be held on the questionable Petition. After the Petition was narrowly approved by a 51-49 percent vote, the City was forced to defend the Petition in an election contest brought after Election Day.  After allocating tens of thousands of dollars in conducting the election and hiring counsel to defend the Election Contest, the City was ultimately found to have improperly called the election.  In her Final Judgment overturning the results of the election, visiting Judge Suzanne Stovall correctly concluded that "…the proposed ordinance

14

would operate to repeal a previously enacted and enforced City Ordinance, and thus should have been classified as a referendum petition.[6]"

12.     The submission and approval of the Petition, which sought to repeal the existing Public Safety Program, circumvented the express limitations on the power of referendum incorporated into the Houston City Charter as adopted in the City's 1913 charter election.  In the event the public desires to properly repeal a public safety program, their remedy is to convince the elected officials to terminate the program in accordance with the agreement.  Alternatively, assuming (without conceding) the power of referendum applies to this Public Safety Program, the law requires that the public first vote to amend the City Charter provisions governing the referendum process to allow petitions to be submitted outside of the current thirty-day window.  Following such a vote, opponents of the City's Public Safety Program could have then proposed a referendum to eliminate the Public Safety Program[7].  Until such a change is submitted and approved by the voters, the public's ability to bypass their elected officials and eliminate the Public Safety Program remains limited, albeit questionably, to the thirty day framework approved through previous charter elections.

13.     After accepting the Petition as a charter amendment petition, rather than the appropriate designation of a referendum petition, the City proceeded to order a Special

---

[6] See Exhibit A. which is a true and correct copy of Final Judgment, Cause No. 09-002877-CV-85.

[7] However, even if such a process could be undertaken, serious legal questions would remain as to its enforceability, as such a change would offend Constitutional contract rights of parties who entered into a legal contract.

*City of Houston v. American Traffic Solutions, Inc.*   (4:10:CV:4545)
ATS's Answer and Counterclaim and Request for Emergency Relief

Election. This election was ordered and conducted without appropriate statutory authority. Chapter 9 of the Texas Local Government Code does not impose an obligation upon the City Council to order an election in a manner directly conflicting with City Charter provisions governing the same.

**B.    The Agreement & Amendment - Background**

14.    On May 31, 2006, the City of Houston awarded a five-year agreement to ATS to install and operate a Photo Red Light Camera Enforcement System and Services. The agreement has an effective date of June 28, 2006. In addition to the initial five-year term, the agreement also provided for an option to renew for an additional five-year period. As part of the bargain struck between the parties, and in an effort to protect ATS on its substantial multi-million dollar investment that it would be making in the project, the City agreed that it could not terminate the agreement for its convenience during the first three years of the agreement. See Section V(C) of the agreement. Should the parties continue to operate under the agreement past this initial three-year term, then, and only then, would the City be entitled to terminate the agreement for its convenience.

15.    Prior to the expiration of the initial three-years of the agreement at which point the termination for convenience would have matured, the City became concerned that a potential ban on red light camera systems might be passed by the Texas Legislature. State Representative Gary Elkins had proposed an amendment to House Bill 300 which could have conceivably: 1) banned the proliferation of red light cameras under an existing program; 2) barred the extension of existing contracts past their initial term; and 3) banned any and all red light cameras, whether currently in use or not, in perpetuity.

16

*City of Houston v. American Traffic Solutions, Inc.*   (4:10:CV:4545)
ATS's Answer and Counterclaim and Request for Emergency Relief

16.     In an effort to further protect the public from the harmful effects the running of red lights and to help prevent accidents, the City decided to amend its agreement with ATS, with a *new effective date* of May 29, 2009.   Section 2(a) of the amended agreement states:

> *"This Agreement is effective on the amended Countersignature Date and remains in effect until May 27, 2014, and may be extended for one additional five-year period under the same terms and conditions thereafter upon written notice of renewal by the Director at least 30 days before the expiration of the then-current term to the extent permitted by law and subject to allocation of funds therefore by the City."*

Section (2a) of the amended agreement *amended and replaced* Section V ("Term and Termination") of the original agreement which stated:

> *"This Agreement is effective on the Countersignature Date and remains in effect for one five (5) year term, unless sooner terminated under this Agreement."*

The termination for convenience provision in the original Agreement had not yet matured when the City entered into the amended agreement with a new effective date.   This amendment came a mere three days before the City's rights under the termination for convenience provision would have matured under the original agreement.

## C.     The Agreement & Amendment – No Termination for Convenience Provision Remains

17.     The City could have amended the Agreement to provide for a longer initial term instead of replacing the entire paragraph.  For example, had the City simply amended the "one five (5) year term" language in the original agreement with "one ten (10) year term", the termination options of the original agreement would have remained in the agreement.  Instead, the City, fearful of HB300, did not want to be forced to terminate the agreement upon the passage of a new state law and therefore, removed the termination

17

provisions of the agreement entirely by clearly stating in the Amendment that it "remains in effect until May 27, 2014". The City also removed "unless sooner terminated under this Agreement" phrase that appeared in the original agreement. Had the City intended to keep its termination options available to it, it could have easily done so. It is clear that they wanted to remove the possibility of being forced to terminate the program upon the passage of HB300.

18.    The amended agreement clearly and unambiguously replaced any termination for convenience clause contained in Section V(C) of the original agreement, such that the City does not possess a termination for convenience clause in either the amended agreement or the original agreement.[8]

19.    Alternatively, to the extent that the court construes the termination for convenience clause provision in Section V(C) of the agreement as surviving the amendments to the original agreement, there is a clear and unambiguous conflict between Section V(C) of the original agreement and Section 2(a) of the amended agreement. Section 3 of the amended agreement dictates that the terms of the amended agreement control over any conflicting provision contained in the original agreement. Section 2(a), therefore,

---

[8] Of note, the May 27, 2009 "Request for Council Action" form observes that the City would retain "its right to terminate the agreement with 120 days notice." However, it was not a right the City then possessed as three years had yet to elapse from the date the original agreement had been entered into, and therefore, the termination for convenience provision had yet to mature. <u>When the City changed the effective date of the original agreement, they changed the termination for convenience provision as well</u>. Moreover, and in the alternative, this document is not a part of the Agreement and constitutes inadmissible and incompetent extrinsic evidence.

supersedes Section V(C) of the original agreement such that no termination for convenience clause exists. Specifically, Section 3 of the Amended Agreement states:

> *"The provisions of this First Amendment and the provisions of the Agreement should be read together and construed as one agreement provided that, in the event of any conflict or inconsistency between the provisions of this First Amendment and the provisions of the Agreement, the provisions of this First Amendment shall control. Nothing contained in this First Amendment shall be construed in any way to limit or to waive the City's sovereign immunity. All other terms and conditions of the Agreement, except as amended in this First Amendment, shall continue in full force and effect."* (emphasis added).

20.     Finally, and in the alternative, to the extent that these particular terms of the original agreement and the amended agreement are unclear and ambiguous, and therefore reasonably susceptible of more than one reasonable interpretation, ATS alleges that extrinsic evidence will demonstrate that the parties' intention in signing the amended agreement was to eliminate the City's right to terminate for convenience so that the City would not be forced to comply with a possible statutorily imposed ban. For all these reasons, the City's attempt to terminate the Agreement is tantamount to a breach of the agreement and amended agreement, for which ATS hereby sues.

**D.     The Agreement & Amendment – The Termination for Convenience Provision was Extended**

21.     ATS alleges that, at most, the City's right to terminate for convenience would not arise, if at all, until after the expiration of three years into the term of the amended agreement (i.e., May 29, 2012). Under this interpretation, the clear wording of the Amended agreement should govern. That language ("This Agreement is effective on the amended Countersignature Date and remains in effect until May 27, 2014, and may be extended for one additional five-year. . .) replaced the effective date of the original

*City of Houston v. American Traffic Solutions, Inc.*   (4:10:CV:4545)
ATS's Answer and Counterclaim and Request for Emergency Relief

19

agreement ("This Agreement is effective on the Countersignature Date and remains in effect for one five (5) year term. . ."). Since the enforceability of the termination for convenience provision in the original agreement rests entirely upon the original agreement's effective date, the amended agreement had the effect of extending the trigger date for the termination for convenience from May 31, 2009 to May 29, 2012. Because the expiration of this three-year period has yet to occur, the City breached the amended agreement by terminating this agreement without any right to do so, for which ATS hereby sues.

**E.    The Agreement & Amendment – The City Failed to Properly Terminate the Agreement in Accordance with the Termination for Convenience Provision**

22.    Alternatively, the City's right to terminate for convenience as contained in the original agreement requires that it provide 120 days advance written notice of its intent to terminate. The City did not provide such notice, in breach of the parties' original agreement, for which ATS hereby sues.

**F.    The U.S. and Texas Constitution**

23.    The U.S. and Texas Constitutions' contain express prohibitions against the adoption of laws that impair the obligation of contracts. For the same reason that the City sought to extend its agreement to protect the Public Safety Program from the Legislature passing a law that would terminate its agreement, the City cannot now adopt a law (or a disguised referendum) to maneuver a way out of the same agreement. Simply put, the City cannot pass a law that renders a agreement unenforceable.

24.    Texas and Federal courts have repeatedly recognized that Art. 1, §10, cl. 1 of the U.S. Constitution and Art. 1 §16 of Texas Constitution ("No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made.")

20

*City of Houston v. American Traffic Solutions, Inc.*   (4:10:CV:4545)
ATS's Answer and Counterclaim and Request for Emergency Relief

prohibit the retrospective application of laws that impair the existing obligations of contracts. Contracts are vested rights that cannot be abrogated by subsequent legislation. *See Hutchings v. Slemons*, 174 S.W.2d 487, 454 (Tex 1943); *Determan, et al. v. City of Irving, et al.*, 609 S.W.2d 565, 567 (Tex. Civ. App.—Dallas, no writ). If the language of the proposed amendment were liberally construed by this court, the operative effect of the amendment would be to prohibit future public safety programs upon the expiration of the current Program in 2014[9].

## XVI. DECLARATORY JUDGMENT CAUSE OF ACTION

25. ATS hereby incorporates counterclaim paragraphs 1-24 as if fully set forth herein.

26. The power of referendum is the exercise by the people of a power reserved to them; under these facts, this reserved power does not include the power to repeal public safety programs in general or this Public Safety Program in particular. "It is not enough that the subject matter of the proposed ordinance be legislative in character but it must also appear that the subject matter of the ordinance has not been withdrawn from the field in which the initiatory process is operative." *Glass v. Smith*, 150 Tex. 632, 244 S.W.2d 645 (Tex. 1951). In *Glass v. Smith*, the Texas Supreme Court, in relying upon a previous case, stated the following:

> In the case of *Taxpayers Ass'n. of Harris County et al v. City of Houston et al, 129 Texas 627, 105 S.W. 2d 655*, this Court said that "the power of initiative and referendum is the exercise by the people of a power reserved to them, and not the exercise of a

---

[9] Additionally, state law provides that a charter change may not affect contractual rights previously granted. *Tex. Local Govt. Code Sec. 51.073.*

*City of Houston v. American Traffic Solutions, Inc. (4:10:CV:4545)*
ATS's Answer and Counterclaim and Request for Emergency Relief

> right granted," and that "in order to protect the people of the city in the exercise of this reserved legislative power, such charter provisions should be liberally construed in favor of the power reserved." Even so, the field in which the initiatory process is operative is not unlimited.  It is first limited by the very nature of the preceeding.  When the people exercise their rights and powers under the initiative provisions of a city charter they are acting as and become in fact the legislative branch of the municipal government.   Accordingly, city charters frequently expressly limit the right of initiative to legislative matters.   But even though a charter contains no such express limitation -- and there is none in the Charter of the City of Austin -- the limitation is usually read into the charter by the courts. *Southwestern Telephone & Telegraph Co. v. City of Dallas*, 104 Texas 114, 134 S.W. 321; *Denman v. Quin, Tex. Civ. App.*, 116 S.W. 2d 783 (writ ref.); McQuillen on Municipal Corporations, 3rd Ed., Vol. 5, p. 253, Sec. 16.55.  The field where the initiatory process is operative may also be limited by general law. Article XI, Section 5 of our Constitution provides that no city charter shall contain any provision inconsistent with the general laws of this state.  Any rights conferred by or claimed under the provisions of a city charter, including the right to an initiative election, are subordinate to the provisions of the general law. It follows that the legislature may by general law withdraw a particular subject from the field in which the initiatory process is operative.  Again, the field may be limited by the city charter itself.  Other provisions of the charter may withdraw from the people the power under the initiative provisions to deal with a particular subject.  The limitation by the general law or by the charter of the field in which the initiatory process is operative may be either an express limitation or one arising by implication.  Such a limitation will not be implied, however, unless the provisions of the general law or of the charter are clear and compelling to that end.

*Glass v. Smith*, 150 Tex. 632, 244 S.W.2d 645, 648-49 (Tex. 1951).  When a municipality

decides to enact a power of referendum, the voters of a particular city may enact certain

limitations that withdraw a particular subject from the field in which the referendum

process traditionally operates.  For example, the Houston City Charter contains an express

requirement that referendum petitions be submitted to the City <u>no later than</u> thirty (30)

days after the adoption or enactment of the ordinance sought to be repealed.  The Petition

for Proposition 3 was accepted by the City nearly six years after the adoption of the original

ordinance sought to be repealed; and two-and-a-half years after the deadline to repeal the

most recent amendments to the City's Public Safety Program.

27.     The question of whether a municipality possessed the statutory authority to order a special election can only be determined by way of a declaratory judgment suit, rather than by an election contest.  *See Commissioners' Court v. Rayburn*, 264 S.W.2d 552, 555 (Tex. Civ. App. – Beaumont 1954, no writ); *City of Sherman v. Hudman*, 996 S.W.2d 904, 912 (Tex. App. – Dallas 1999, pet. granted, judgm't vacated w.r.m.).   ATS respectfully requests that this court determine whether the power of referendum in the Houston City Charter includes the power to repeal public safety programs in general and this Public Safety Program in particular.  Further, ATS respectfully requests that this court determine whether the election ordered by the Houston City Council on August 24, 2010 constituted a referendum election that would invalidate or otherwise repeal the ordinance which authorizes the City to operate its Public Safety Program.

28.     Should the court determine that the operative effect of the Election would be to repeal the City's Public Safety Program, ATS requests that the court determine:

a.     Whether the subject matter of the Referendum concerns a power reserved to the electorate.

b.     Alternatively, whether the purported Charter Amendment Petition was in fact an untimely-filed referendum.

Such determinations will enable the court to render an opinion as to whether the ordering of the election was done without appropriate authority; rendering the results void from the outset.

29.     In the event the court agrees that the November 2010 special election repeals the ordinance implementing the City's Public, the court is asked to determine whether titling the Petition as a "Charter Amendment Petition" pursuant to Chapter 9 of the

23

Texas Local Government Code allows the Petition's authors to bypass the express subject matter and/or temporal limitations of the power of referendum approved by the voters of the City of Houston.

30.     Accordingly, ATS seeks a declaration by this court that:

a.     The November 2, 2010 Special Election on Proposition No. 3 was ordered without statutory authority because the subject matter of the petition was not in accordance with a power reserved for the electorate,.

b.     The November 2, 2010 Special Election on Proposition No. 3 was ordered without statutory authority due to the fact that the Petition's submission was more than thirty days after the adoption of the Ordinance[s] sought to be repealed.

c.     The City could not terminate the agreement or amended agreement for its convenience according the terms of the parties' agreement.

31.     Alternatively, should the court determine the November 2, 2010 Special Election was legally ordered and conducted, ATS asks the court to declare that under the U.S. and Texas Constitutions' express prohibitions against the adoption of laws that impair the obligation of contracts, the City could not pass a law that rendered its agreement with ATS unenforceable

32.     ATS also asks this court, to declare the rights and obligations of the public to propose and vote upon Charter Amendments addressing public safety policy considerations reserved for the City's governing body.

### XVII. BREACH OF CONTRACT CAUSE OF ACTION

33.     ATS hereby incorporates counterclaim paragraphs 1-32 as if fully set forth herein.

34.     By purporting to terminate the agreement, the City has materially breached the terms of the agreement, for which ATS has been harmed.

35.     ATS asks this court, after consideration, to declare that the City has breached its agreement with ATS by prematurely terminating the Public Safety Program and related agreement.

## XVIII.  INJUNCTIVE RELIEF

36.     ATS seeks injunctive relief preserving the status quo pending resolution of the issues raised herein.  ATS asks the court to order the City to immediately resume its obligations under the Agreement.

## XIX.  PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

37.     ATS seeks an order enjoining the City from implementing any legislation and/or declaring any such legislation void that addresses issues of public safety exclusively reserved to the City Council, such as the operation of automated traffic enforcement systems.

38.     ATS seeks an order enjoining the City from anything less than complete compliance with its obligations under the agreement related to the City's Public Safety Program.

39.     ATS seeks an order enjoining the City from terminating the City's Public Safety Program or otherwise implementing Proposition 3.

## XX.  APPLICATION FOR PRELIMINARY INJUNCTION

40.     ATS asks this court to enter a preliminary injunction granting the relief requested herein.

*City of Houston v. American Traffic Solutions, Inc.*   (4:10:CV:4545)
ATS's Answer and Counterclaim and Request for Emergency Relief

41.     It is probable that ATS will prevail against the City on the merits and obtain permanent injunctive relief precluding the termination of the Public Safety Program by way of the charter amendment process.  It is probable that ATS will prevail on the merits and demonstrate the aharter amendment election of November 2010 was ordered without appropriate statutory authority.

42.     If ATS's application for preliminary injunction is not granted, irreparable harm is imminent.   Federal courts have often enjoined political subdivisions from implementing the results of elections where there was a substantial likelihood that the results would be tainted with federal constitutional or statutory problems.[10]

43.     ATS has no adequate remedy at law because the substantial harm caused by the termination of an essential Public Safety Program is incalculable and a money judgment could not serve as adequate compensation for the harm inflicted on those drivers, passengers, and pedestrians served by the City's Public Safety Program.   If the court declares the City has terminated the agreement inappropriately, ATS should not be forced to undertake time-sensitive, labor-intensive and costly obligations it is contractually required to undertake within weeks of termination.   Therefore, it is imperative the court preserve the status quo pending the resolution of these issues.  Given the importance of the constitutional and electoral issues at issue, the public interest would be furthered by issuing a preliminary injunction requiring the City to comply with its obligations under the Agreement and the Public Safety Program pending further determination by the court.

---

[10] See, e.g., *Hoblock v. Albany Cty. Bd. of Elecs.*, 422 F.3d 77, 83 (2d Cir. 2005); *Doe v. Walker*, No. 10-CV-2646 (RWT), 2010 U.S. Dist. LEXIS 115457, at *39-40 (D.Md. Oct. 29, 2010)

*City of Houston v. American Traffic Solutions, Inc.*   (4:10:CV:4545)
ATS's Answer and Counterclaim and Request for Emergency Relief

## XXI.  REQUEST FOR HEARING ON PRELIMINARY INJUNCTION

44.     ATS re-alleges the factual allegations contained herein.

45.     ATS asks the court to set this request for preliminary injunction for hearing, and after the hearing, enter a preliminary injunction granting the relief requested.  This hearing request has become necessary because, despite demand by ATS that the Public Safety Program continue, the City has refused, and continues to refuse, to do so.

## XXII.  REQUEST FOR PERMANENT INJUNCTION

46.     ATS re-alleges the foregoing Paragraphs 1 through 45 of this counterclaim.

47.     After full trial on the merits, ATS asks the court to enter a permanent injunction granting the relief requested.

## XXIII.  BOND

48.     ATS is willing to post a reasonable bond.

## XXIV.  RELIEF REQUESTED

49.     For the foregoing reasons, ATS respectfully requests that the court enter orders against the City consistent with the relief requested.  ATS requests that this court enter a judgment declaring that the City's Public Safety Program, the Ordinances which approved the Public Safety Program, as well as the agreement and amended agreement, were in no way affected by the outcome of the November 2, 2010 election on Proposition No. 3; a judgment articulating the Constitutional prohibition against any such future attempts to legislatively terminate the agreement; and a judgment articulating the limited authority of the public to propose binding legislation related to a municipality's public safety programs in general, and this Public Safety Program in particular.

For these reasons, this court should grant ATS's request for a hearing on its application for preliminary injunction.

DATED at Houston, Texas, this the 24th day of November, 2010.

Respectfully Submitted,

ANDY TAYLOR & ASSOCIATES, P.C.

BY: _Andy Taylor / w.c. 11/23_

Andy Taylor
State Bar No.  19727600
Amanda Peterson
State Bar No.  24032953
405 Main Street, Suite 200
Houston, TX  77002
713-222-1817 (telephone)
713-222-1855 (facsimile)

THE LAW OFFICE OF ROGER GORDON
Roger E. Gordon
State Bar No. 24043697
901 S. Mopac Expressway
Building One, Suite 300
Austin, Texas 78746
512-636-2540 (telephone)
512-692-2533 (facsimile)
(Application for *pro hac vice* admission forthcoming)

*City of Houston v. American Traffic Solutions, Inc.*   (4:10:CV:4545)
ATS's Answer and Counterclaim and Request for Emergency Relief

28



CAUSE NO. 09-002877-CV-85

JOHN HEMRICK, GARY IVES;                    §          IN THE DISTRICT COURT OF
     *Plaintiffs*                            §
                              §
v.                                          §
                              §
THE CITY OF COLLEGE STATION,                §          BRAZOS COUNTY, TEXAS
BEN WHITE, *in his official capacity*       §
*as Presiding Officer for the City Council* §
*of the City of College Station;*           §
     *Defendants*                            §          85ᵗʰ JUDICIAL DISTRICT

---

## JUDGMENT

On the 20ᵗʰ day of November, 2009, this Cause came to be heard. John Hemrick and Gary Ives, the Contestants, appeared in person and by their attorneys of record and announced ready for trial. The City of College Station and Ben White, in his official capacity as the presiding officer for the City Council of the City of College Station, the Contestees, appeared through their attorneys of record and announced ready for trial.

The Court, after hearing the evidence and considering the Agreed Statement of Facts, arguments and briefs of counsel, is of the opinion that the outcome of the contested election for the approval of Proposition Number 1, related to the adoption of an ordinance declaring City of College Station Ordinance No. 3017 unenforceable, as previously determined and certified by the City Council of the City of College Station, is not the true outcome. The Court is of the opinion that the effect of the proposed ordinance would operate to repeal a previously enacted and enforced City Ordinance, and thus should have been classified as a referendum petition. Inasmuch as Section 84 of the College Station City Charter imposed an obligation upon the citizens to submit a referendum petition within twenty (20) days of enactment of City Ordinance

*John Hemrick and Gary Ives v. City of College Station, Texas, et al.*                                         1
*Final Judgment*

Exhibit A

3017, the citizens of the City of College Station submitted the petition outside of the statutorily-required time frame.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the results of the contested election for the approval of Proposition Number 1, related to the adoption of an ordinance declaring City of College Station Ordinance No. 3017 unenforceable, are hereby declared VOID and without any legal effect for all purposes. Therefore, it is ORDERED that all relief should be, and the same is hereby GRANTED, to Plaintiffs John Hemrick and Gary Ives.

All costs of court are taxed against the party incurring the same.

All other relief not expressly granted herein is denied.

This is a Final Judgment.

Signed on this the ___3___ day of December, 2009.

_____
Judge Presiding

*John Hemrick and Gary Ives v. City of College Station, Texas, et al.*
*Final Judgment*

2