**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION**

| | | |
|---|---|---|
| *The City of Houston,* | § | |
|     Plaintiff and Counter-Defendant, | § | |
| | § | |
| versus | § | |
| | § | |
| *American Traffic Solutions, Inc.,* | § | ACTION NO.  H-10-4545 |
|     Defendant and Counter-Plaintiff. | § | |
| | § | |
| *Francis M. Kubosh and Randall Kubosh,* | § | |
|     Intervenors and Counter-Defendants. | § | |

**FRANCIS AND RANDALL KUBOSH'S MOTION TO INTERVENE
IN RESPONSE TO COUNTER-PLAINTIFF ATS'S COUNTERCLAIM TO
NULLIFY 181,389 VOTES AGAINST THE CITY OF HOUSTON'S
<u>CONTINUED USE OF RED LIGHT CAMERAS</u>**

**TO DISTRICT JUDGE LYNN N. HUGHES:**

Intervenors Francis M. Kubosh ("Francis") and Randall Kubosh ("Randall") (collectively, "Kubosh") move to intervene in the lawsuit between Plaintiff/Counter-Defendant City of Houston ("City") and Defendant/Counter-Plaintiff American Traffic Solutions, Inc. ("ATS").  On November 24, 2010, on the eve of the Thanksgiving Day weekend, ATS counter-sued the City to nullify the results of the November 2, 2010 election, when 181,389 Houstonians, or fifty-two and 81/100 percent (52.81%) of those who voted on Proposition 3, voted against the City's continued use of Red Light Camera ("RLC") revenue-enhancement systems.  ATS also seeks to overturn an August 24, 2010, 11-1 decision of City Council ("Council") granting Houstonians a vote on ATS's RLC system on November 2, 2010.  Intervenors reasonably fear that the City has tens of millions of reasons ($) for wanting ATS to win its Counterclaim and nullify the vote.

# Table of Contents

                                                                    Page

**Table of Contents** .................................................... i

**Index to Authorities** .................................................. ii

**Relief Requested: Approval of Francis and Randall Kubosh's intervention** ........... 1

**Nature and Stage of the Proceeding** ..................................... 1

**Short Summary of the Argument** ........................................ 1

**I.** **Francis and Randall are entitled to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2) and as a matter of discretion under Fed. R. Civ. P. 24(b)(1)** ........................................ 3

**II.** **Francis and Randall intervene to defend their rights as City voters, and the rights of more than 30,000 other voters who signed petitions seeking a vote to end the use of RLC revenue-raising systems in Houston** ............................................. 4

    A.   Francis and Randall are registered City of Houston voters who signed petitions in support of placing the RLC proposition on the November 2, 2010 ballot in the City, who then voted "No" on Proposition No. 3 in the November 2, 2010 election ................................................. 4

    B.   Francis and Randall bring the interest, experience, and financial resources necessary to defend the November 2, 2010 election and the City Council's 11-1 vote to place a RLC charter-amendment proposition on the November 2, 2010 ballot ........................................ 8

    C.   This case arises from the efforts of a government contractor, American Traffic Solutions, Inc., to deprive Houston and Baytown voters of their vote in charter-amendment elections ............... 11

**III.** **Francis and Randall amply satisfy the requirements in Fed. R. Civ. P. 24(a)(2) and 24(b)(1) for intervention** ........................ 15

**Conclusion and Prayer for Relief** ...................................... 21

**Signature Page** ...................................................... 22

**Certificate of Service** ........................................................................... 23

**Certificate of Conference with Opposing Counsel** ......................... 23

**Intervenors Randall and Francis Kubosh's List of Exhibits**
**Attached to and Incorporated by Reference in this Motion** ................... i

## Index to Authorities

**Precedent**

*Brennan v. New York City Bd. of Educ*., 260 F.3d 123 (2d Cir. 2001).

*Cajun Elec. Power Coop v. Gulf States Utils., Inc.,* 940 F.2d 117 (5th Cir. 1988).

*Coalson v. City Council of Victoria,* 610 S.W.2d 744 (Tex. 1980).

*Cotham v. Garza,* 905 F. Supp. 389 (S.D. 1995).

*DuBose, Marco and Jeanette, Plaintiffs v. Meyerland Community Improvement Association, Inc.*, No. 94-009758, in the 280th Judicial District Court of Harris County, Texas (final judgment: October 14, 1994).

*Hopwood v. State of Texas*, 21 F.3d 603 (5th Cir. 1994).

*Kubosh, Felix Michael v. City of Houston*, No. 2007-11183, in the 127th Judicial District Court of Harris County (Dec. 17, 2007).

*Michigan St. AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997).

*Pruett v. Harris County Bail Bond Board*, 400 F. Supp. 2d 967 (S.D. 2005) and No. H-03-3241, 2005-U.S. Dist. LEXIS 28745 (S.D. Tex. July 20, 2005), *aff'd in part and rev'd in part,* 499 F.3d 403 (5th Cir. 2007), *cert. denied,* Nos. 07-697 & 07-856, 2008 U.S. LEXIS 1355 and 1257 (U.S. Feb. 19, 2008), 593 F.Supp.2d 944 (S.D. Tex. 2008).

*Taxpayers' Ass'n of Harris County v. City of Houston,* 105 S.W.2d 655 (Tex. 1937).

*U.S. v. Washington*, 86 F.3d 1499 (9th Cir. 1996).

**Constitutional Law**

Texas Const., Art. I, Section 13.

Texas Const., Art. I, Section 16.

Texas Const., Art. I, Section 19.

**Statutory Law**

Texas Local Government Code Section 9.004.

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 24(a)(2).

Fed. R. Civ. P. 24(b)(1).

**Scholarly Authorities**

Australian Road Research Board, *Research Report ARR 261: A long term study of Red Light Cameras and Accidents* (February 1995).

Falkenburg, Lisa, "Lawyer on crusade over red-light cameras," *Houston Chronicle* (Aug. 18, 2010), City Section, 1, on Chron.com, available online at http://www.chron.com/disp/story.mpl/metropolitan/falkenberg/7159255.html

Olson, Bradley, "Red-light camera foes may be too late for referendum," *Houston Chronicle* (Aug. 9, 2010), City Section, 1, on Chron.com, available online at http://www.chron.com/disp/story.mpl/metropolitan/7146495.html.

Virginia Transportation Research Council, *The Impact of Red Light Cameras (Photo Enforcement) on Crashes in Virginia* (June 2007).

## **Relief Requested**

Francis and Randall ask this Court to permit them to intervene to defend (1) the outcome of the election on City Proposition 3, on November 2, 2010 and (2) the City's decision to permit them and other voters to decide on November 2, 2010 whether to amend the City's Charter to bar the City's further use of RLC systems.

## **Nature and Stage of the Proceeding**

The City filed this declaratory judgment lawsuit on November 15, 2010. Defendant ATS filed a counterclaim on November 24, 2010.  It is in the earliest stage of the litigation.  ATS, the only defendant, has filed an answer.

## **Short Summary of the Argument**

This Court should permit Francis and Randall to intervene in this case, *and to obey this Court's tight briefing deadlines*, to raise meritorious factual and legal issues the City is not likely to raise without their intervention.  The day after the November 2, 2010 election, City officials ceased talking about the "public safety" aspects of the vote on Proposition 3 and began discussing how to replace some ten million dollars ($10,000,000) in lost revenue.  While the Mayor and most City Council Members opposed the RLC charter-amendment proposition, Francis and Randall Kubosh sought to end the use of cameras and to reform the procedures available to regulate traffic within the City of Houston.

The City's defense of the RLC proposition is compromised by an inherent conflict: a courtroom victory over ATS would deprive the City of tens of millions of dollars generated by ATS's seventy (70) Red Light Cameras and the City's power to

continue issuing "civil, administrative" tickets to vehicle-owners.  The City has issued more than 796,000 tickets so far.  It has collected more than $44 million in civil fines.  The Houston Police Department ("HPD") has kept $16 million and ATS has received more than $9 million.

Francis and Randall Kubosh fear that the City's Original Complaint reflects a willingness to bestow a victory on ATS.  On pages 3-4 of its Original Complaint, the City raised the issue at the heart of ATS's counterclaim – whether the election was an untimely referendum or a proper exercise of the people's power to approve a charter-amendment under the Texas Constitution and the Texas Local Government Code.  Here is how the City pled its case on page 3 of its Complaint:

> 8.     The only process for non-elected citizens to propose the repeal of an existing ordinance, the referendum process, is set forth in Article VII-b. § 3 of Houston's Charter.  However, on August 9, 2010, a petition to amend Houston's Charter—under Chapter 9 of the Texas Local Government Code—to prevent the use of red light cameras to enforce traffic laws [Petition] was submitted to Houston's City Secretary….

Why would the City throw in those gratuitous and unnecessary lines about its referendum process if it was in fact seeking to defend the voters' defeat of City-drafted Proposition No. 3 on November 2, 2010?  The City's First Amended Complaint, filed on November 19, 2010, used exactly the same language in re-numbered Paragraph 9.

Why would the City undermine its case in its own Complaint?  Why would the City unnecessarily raise an issue that anticipates ATS's Counterclaim and retain that gratuitous statement and self-inflicted wound in its amended pleading?

Why would the City oppose Intervenors' motion for intervention when Francis and Randall Kubosh can bring additional resources and case law to bear in defense of a controversial election result, especially when the briefing schedule is so tight?

Francis and Randall Kubosh do not know whether the City intends to zealously defend the people's November 2, 2010 vote, but they reasonably fear that the City has important reasons to let ATS win this lawsuit.

Francis and Randall Kubosh helped organize the charter-amendment petition at issue in this case. They strongly oppose the City's RLC system. They have the deep background knowledge, familiarity with the issues, and financial resources to vindicate the City Council's reluctant decision to place an RLC proposition on the November 2, 2010 ballot.

## I.   Francis and Randall are entitled to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2) and as a matter of discretion under Fed. R. Civ. P. 24(b)(1).

1.   To intervene as a matter of right in a pending federal district court case, an intervenor must: (1) file a timely application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest asserted is not protected adequately by the parties to the action. *Brennan v. New York City Bd. of Educ.*, 260 F.3d 123, 128-29 (2d Cir. 2001).

2.   Permissive intervention requires: (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action. *U.S. v. Washington*, 86 F.3d 1499, 1506-07 (9th Cir. 1996).

    3.     Francis and Randall move to intervene under *both* prongs of the rule.

**II.**    **Francis and Randall intervene to defend their rights, and the rights of more than 30,000 other voters who signed petitions seeking a vote to end the use of RLC revenue-raising systems in Houston.**

    **A.**    **Randall is a registered City of Houston voter who signed a petition in support of placing the anti-RLC proposition on the November 2, 2010 ballot in the City, and who then voted "No" on Proposition 3 in the November 2, 2010 election.**

    4.     As set forth in the attached Affidavit of Randall Kubosh, Intervenor's Exhibit 1, Francis and Randall are residents of the City and voted in the November 2, 2010 election. Both live and work in the Houston Division of this District.

    5.     Most importantly, Francis and Randall helped organize the charter-petition campaign that resulted in the City Council's August 24, 2010 decision to put the RLC revenue-raising issue on the ballot, and each of them signed a petition for a charter-amendment election. A true copy of a representative part of the petition City Secretary Anna Russell certified as signed by more than 20,000 registered City voters is attached as Randall Kubosh Affidavit Exhibit 1.A. Francis and Randall signed identically-worded petitions to ban RLC systems in Houston.

    6.     Francis and her sons Randall, Paul Kubosh ("Paul"), and Felix Michael Kubosh ("Mike") filed Francis's and Randall's signatures along with 31,000 other signatures on identical petitions requesting a vote on RLC issues. Francis, Randall, Paul, and Mike (collectively, the "Kubosh Family") gathered 50,000 signatures, verified some 31,000, and submitted them to City Secretary Anna Russell on August 9, 2010.

7.     On August 24, 2010, City Secretary Anna Russell certified that the City had received the 20,000 certified signatures necessary to call a charter-election as well as a number of additional certified signatures (in the thousands) sufficient to convince her and the City's Legal Department that the Kubosh Family had clearly satisfied the governing legal requirements as set forth in Chapter 9 of the Texas Local Government Code.

8.     The Texas Constitution and state statutory law trump inconsistent city ordinances, just as the U.S. Constitution and federal statutes trump inconsistent state laws.  The Kubosh Family strictly adhered to Texas law in submitting their charter-amendment petitions, as set forth in Texas Local Government Code Section 9.004 (Charter Amendments):

(a)     The governing body of a municipality on its own motion may submit a proposed charter amendment to the municipality's qualified voters for their approval at an election. **The governing body _shall_ submit a proposed charter amendment to the voters for their approval at an election if the submission is supported by a petition signed by a number of qualified voters of the municipality equal to at least five percent of the number of qualified voters of the municipality or 20,000, whichever number is the smaller.**

(b)     The ordinance ordering the election shall provide for the election to be held on the first authorized uniform election date prescribed by the Election Code or on the earlier of the date of the next municipal general election or presidential general election. The election date must allow sufficient time to comply with other requirements of law and must occur on or after the 30th day after the date the ordinance is adopted.

(c)     Notice of the election shall be published in a newspaper of general circulation published in the municipality. The notice must:

(1)     include a substantial copy of the proposed amendment;

(2)     include an estimate of the anticipated fiscal impact to the municipality if the proposed amendment is approved at the election;

and

(3)    be published on the same day in each of two successive weeks, with the first publication occurring before the 14th day before the date of the election.

(d)    An amendment may not contain more than one subject.

(e)    The ballot shall be prepared so that a voter may approve or disapprove any one or more amendments without having to approve or disapprove all of the amendments.

(f)    The requirement imposed by Subsection (c)(2) does not waive governmental immunity for any purpose and a person may not seek injunctive relief or any other judicial remedy to enforce the estimate of the anticipated fiscal impact on the municipality.

(Emphasis supplied to show the mandatory "shall" nature of the law).

9.    The voters' use of a state-wide statutory charter-amendment procedure consistent with the Texas Constitution to amend the City's Charter does not reflect a change in voting practices and policies in Texas.  These procedures are a century old.

10.    Charter-amendment petitions have long been a part of municipal politics in Texas.  This year, three propositions for charter-amendments appeared on the City's November 2, 2010 ballot.  In 2001, the same City Secretary who certified the Kubosh family's RLC petitions, Anna Russell, certified three charter-amendment petitions submitted pursuant to Texas Local Government Code Section 9.004 for City elections.  Ms. Russell's three certification-letters to then-Mayor Lee P. Brown and the City Council dated September 12, 2001 (concerning same-sex domestic-partner benefits), October 1, 2001 (concerning special rail-projects), and October 25, 2001 (concerning voter approval before the City could increase revenue).  True copies are attached as Randall Affidavit Exhibits 1.B, 1.C, and 1.D, respectively.

11.     Randall participated in the submission of petitions bearing more than 31,000 voter names to City Secretary Anna Russell as part of his family's campaign to compel the City to submit an RLC proposition to City voters.

12.     City Secretary Anna Russell certified that there were more than the 20,000 signatures necessary for certification of an RLC charter-amendment election on August 24, 2010.  That certification resulted in the City Council's 11-1 decision to order a ballot that included an RLC proposition.  A true copy of the charter-amendment election issue, as it will appear on the November 2, 2010 ballot in voting booths in the City is attached as Randall Kubosh Affidavit Exhibit 1.E.

13.     The City Council debated the legality and necessity of placing an RLC proposition on the ballot.  The Mayor concluded and forthrightly stated, to her credit, that the City Council had a mandatory, ministerial duty to place the RLC issue on the ballot. To his credit, the City Attorney advised the City Council that it had a mandatory, ministerial duty to place the RLC issue on the ballot.  Those decisions and statements were legally correct and a proper response to the will of Houston's voters.

14.     City Council members explored every alternative to placing the issue on the ballot; they debated the same issues about referenda, ordinances, and the Local Government Code that Plaintiffs raise in this suit. A true copy of the transcript of the City Council's August 24, 2010 meeting is attached as Randall Kubosh Affidavit Exhibit 1.F.

Randall intervenes to defend the City Council's decision – and to offer alternative grounds for this Court to reject the Plaintiffs' efforts to derail the democratic process.[1]

15. The City Council voted 11-1 in favor of presenting the proposition to citizens for a vote. The City Council did so only after its members reluctantly concluded that the Texas Constitution and Local Government Code trumped the City's ordinances governing referenda. *See* Randall Affidavit Exhibit 1.F, at 49-50

**B. Francis and Randall bring the interest, experience, and financial resources necessary to defend the November 2, 2010 election and the City Council's 11-1 vote to place a RLC charter-amendment proposition on the November 2, 2010 ballot.**

16. Francis is a long-time City resident and voter, while Randall is a bail-bondsman familiar with the operation of the criminal justice and traffic ticket systems in Houston. For many years he helped his brothers Mike and Paul handle bail bonding issues. Randall is familiar with criminal justice and with business matters involving traffic, misdemeanor, and felony court cases. He participated in his family's year-long effort to collect more than the 20,000 signatures of registered voters necessary under state law to place an RLC charter-amendment proposition on the November 2, 2010 ballot.

17. Randall has worked for many years with attorneys at Thompson & Knight LLP and elsewhere in litigation of federal and state cases. Those cases included a First Amendment case in the U.S. District Court for the Southern District of Texas and Fifth

---

[1] The transcript reflects an accurate transcription of relevant statements related to the RLC proposition as made in City Council on August 24, 2010, as memorialized on the 4 hour and 15 minute HTV (Houston Television) website video of that meeting available at http://houstontx.city.swagit.com/. Pursuant to Federal Rule of Evidence 201(d), Randall requests this Court to take judicial notice of the contents of that meeting as reflected in the video and in his attached Affidavit Exhibit 1.F transcript.

Circuit.  It lasted five years in the trial court and involved an appeal and cross appeal that ended in a U.S. Supreme Court denial of *certiorari*.[2]  Counsel has handled issues involving Texas elections and election law on previous occasions, including:

➢   *Cotham v. Garza,* 905 F. Supp. 389 (S.D. 1995) (a First Amendment victory for voters, striking down a Jim Crow era provision in the Texas Election Code and securing the right to bring an election guide or editorial into the voting booth); and

➢   *Marco and Jeanette DuBose, Plaintiffs v. Meyerland Community Improvement Association, Inc.*, No. 94-009758, in the 280th Judicial District Court of Harris County, Texas (final judgment: October 14, 1994) (represented Meyerland homeowners Marco and Jeanette DuBose and secured a final declaratory and injunctive judgment under the First and Fourteenth Amendments to the U.S. Constitution and their trial court attorney's fees, costs, and conditional awards of appellate fees in a challenge to the Meyerland Community Improvement Association's enforcement of deed restrictions banning the residential display of political candidate signs).

18.   Francis and Randall are able to fund a vigorous constitutional and statutory defense of the City Council's decision on August 24, 2010 to permit the City's voters to decide whether they want the City to continue using RLC to raise revenue.

19.   Francis and Randall offer insights about the factual and legal issues in the only litigation to date concerning RLC systems: *Felix Michael Kubosh v. City of Houston*, No. 2007-11183, in the 127th District Court of Harris County.  Randall's

---

[2] *See Pruett v. Harris County Bail Bond Board*, 400 F. Supp. 2d 967 (S.D. 2005) (a First Amendment plaintiff's victory in a commercial speech case about bail-bonding solicitation) and No. H-03-3241, 2005-U.S. Dist. LEXIS 28745 (S.D. Tex. July 20, 2005), *aff'd in part and rev'd in part,* 499 F.3d 403 (5th Cir. 2007) (a First Amendment appellate victory in that same commercial speech case about bail-bonding solicitation), *cert. denied,* Nos. 07-697 & 07-856, 2008 U.S. LEXIS 1355 &1257 (U.S. Feb. 19, 2008), 593 F.Supp.2d 944 (S.D. Tex. 2008) (fee and expense award).

brother Mike was lead plaintiff, and Randall's brother Paul was lead counsel. That case ended in Judge Sharolyn Wood's Final Judgment on December 17, 2007 in which she:

➢ declared "that the City's failure to require or present authenticated evidence at its administrative adjudicative hearings, violates due process under Article I, Section 19 of the Texas Constitution…,"

➢ ruled that "the City's $10 non-refundable appellate fee violates the open courts guarantees of Article I, Section 13 of the Texas Constitution," held that the two challenged "Red Light Camera Notices of Determination that the City took against Plaintiffs [Felix Michael] Kubosh and [Kimberly] Levi are VOID";

➢ ordered that "the City and its employees, contractors, agents, and all others acting as debt collectors for the City are Permanently Enjoined from taking further collection efforts against Plaintiff Levi in connection with the probable, imminent, and irreparable injury she would suffer from the reporting of her alleged delinquency under the City's void Notice of Violation against her to credit bureaus, initiation of collection proceedings, and institution of a civil collection suit against her,"

➢ decreed that the City must "Cease, Desist, and Refrain from any dissemination" and its agents from enforcing its Determination against Plaintiff Levi as a civil judgment; and

➢ held that the City's enactment of its first (later superseded) RLC ordinance was not an *ultra vires* act.

10

A true copy of that judgment is attached as Randall Affidavit Exhibit 1.G.  That Final Judgment demonstrates the independence Francis and Randall bring to this case.  Francis and Randall are able and willing to present legal issues different from the ones the City will likely bring to its defense of this lawsuit.

20.    Francis and Randall have unique knowledge from active involvement in decade-long legislative battle to outlaw RLC revenue-raising systems.  The Kubosh Brothers have actively monitored the Legislature as it has passed bills and enacted statutes changed RLC law in Texas.  They have spoken with hundreds of voters as he worked to gather signatures on RLC charter-amendment petitions.

**C.    This case arises from the efforts of a government contractor, American Traffic Solutions, Inc., to deprive Houston and Baytown voters of their vote in charter-amendment elections.**

21.    ATS, an Arizona-based private company, markets RLC systems to cities and counties throughout the country.  ATS lobbyists convince city councils and county commissioners courts to install RLC systems as a means of raising revenue without appearing to raise taxes.  Recent increases in city and county use of RLC systems reflect efforts by ATS and various cities to raise revenue rather than improve public safety.

22.    On Tuesday, August 24, 2010, the City's Secretary, Anna Russell, certified signatures in excess of the minimum number of 20,000 voter-signatures necessary under Texas Local Government Code Chapter 9 to call a charter-amendment election (the petitions presented included more than 30,000 voter signatures, but only 20,000 authenticated, registered-voter signatures were needed for certification under state law).

23.     On that same day, August 24, 2010, Mayor Annise Parker and City Attorney David M. Feldman advised the City Council that City Secretary Anna Russell's certification of more than 20,000 valid voter-signatures imposed a "ministerial duty" on the City Council to place an RLC issue on the ballot.  *See* Randall Affidavit Exhibit 1.F.  Mayor Parker informed Council Members that, in her opinion, they had a "ministerial duty" to place the proposition on the ballot for November 2, 2010.  *Id.* at 1.  City Attorney Feldman summarized the law for the Council Members who had no desire to approve an ordinance that might undermine a principal source of revenue:

> You are still required to vote to pass the ordinance which is the election order.  The order does require a vote of council.  The Mayor's point is that this is a ministerial duty.  There is no legal alternative, but to place the matter on the ballot as a charter amendment that was duly filed, presented to the City Secretary and certified by the City Secretary in accordance with Chapter 9 of the Local Government Code….

*Id.* at 3-4.  When the City Council approved the placement of the RLC proposition on the November 2, 2010 ballot, they did so not because they wanted to (most did not want to) but because they recognized that they *had* to do so to avoid exposing the City to a legal defeat in a mandamus action and a Civil Rights Act lawsuit.

24.     The Mayor and City Council sought to keep the City's lucrative RLC system in place: they wanted the proponents of the RLC issue, the Kubosh Family, to lose the charter-amendment election.  The City has a large financial stake in defeating the charter-amendment proposition at the polls, for it issued 796,000 tickets and collected more than $44 million in fines. The Houston Police Department kept $16 million, while ATS received about $9 million.  *See* Lisa Falkenburg, "Lawyer on crusade over red-light

cameras," *Houston Chronicle* (Aug. 18, 2010), City Section, p. 1, on Chron.com, http://www.chron.com/disp/story.mpl/metropolitan/falkenberg/7159255.html, a true copy of which is attached as Randall Affidavit Exhibit 1.H.

25.     Mayor Parker reacted to the August 9, 2010 submission of the charter-amendment petitions the ATS Plaintiffs attack by calling an immediate press conference in which she questioned "whether there would be enough time for the city secretary to verify that the signatures are from registered Houston voters before an upcoming Aug. 24 election deadline."   A true copy of Bradley Olson's article reflecting the Mayor's statement at that press conference is attached as Randall Affidavit Exhibit 1.I, "Red-light camera foes may be too late for referendum," *Houston Chronicle* (Aug. 9, 2010), City Section,        1,        on        Chron.com,        available        online        at http://www.chron.com/disp/story.mpl/metropolitan/7146495.html.

26.     Charter-amendment elections of the kind the City Council ordered on August 24, 2010 endanger the money ATS makes by foisting RLC systems on city councils and county governments eager to use any excuse to raise revenue.   A true copy of ATS's contract to provide RLC systems for the City of Houston, executed on November 1, 2005, as certified by City Secretary Anna Russell, is attached as Randall Affidavit Exhibit 1.J.

27.     In its efforts to defend RLC revenue-raising systems that masquerade as traffic-safety programs, ATS creates and funds political action committees such as its special purpose political action committee Keep Houston Safe.   To deter cities from letting their voters decide whether to continue using RLC systems, ATS files lawsuits

against cities, either directly or through front groups such as KHS.  ATS filed one such suit in the 11th Judicial District Court of Harris County on Thursday, September 2, 2010.  Andy Taylor, the attorney representing ATS and Allen Russell, sued the City of Baytown, Baytown City Secretary Leticia Garza, and Stephen DonCarlos, the Presiding Officer of Baytown's City Council on September 2, 2010 to deny Baytown's voters an opportunity to decide whether their city should continue using ATS's red light cameras.  A true copy of ATS's Original Petition in the Baytown lawsuit is attached as Randall Kubosh Affidavit Exhibit 1.K.

28.    The next day, on Friday, September 3, 2010, the same ATS attorney, Andy Taylor, copy-edited the Baytown lawsuit into a federal district court Original Complaint he filed and litigated in Judge Nancy Atlas's court: *Howard Watson and Keep Houston Safe, S.P.C.A. v. The City of Houston,* Cause No. 4:10-cv-03211, in the U.S. District Court for the Southern District of Texas.  That lawsuit in this courthouse and the Baytown lawsuit in state court reflect ATS's continuing efforts to disenfranchise voters in Baytown and Houston who signed petitions seeking to place an RLC charter-amendment on the November 2, 2010 ballot.  A true copy of that ATS-backed lawsuit is attached as Randall Kubosh Exhibit 1.L.

29.    Both of ATS's lawsuits in the early autumn of 2010 alleged spurious claims under the Voting Rights Act of 1965 in an abortive effort to block ordinary charter-amendment votes in those cities.  ATS did not seek to block other charter-petition amendments on the ballot but only those charter-amendments that endangered ATS's lucrative municipal RLC contracts.

### III. Francis and Randall amply satisfy the requirements in Fed. R. Civ. P. 24(a)(2) and 24(b)(1) for intervention.

30.     To successfully defend the City Council's placement of the RLC initiative on the November 2, 2010 ballot, Francis and Randall file this motion and their Original Answer.  They can satisfy all criteria listed under both sections of Federal Rule 24.

31.     *First*, Francis and Randall file this motion to intervene within one week after ATS's November 24, 2010 filing of its counterclaim to nullify the November 2, 2010 election result.  Francis and Randall are prepared to comply with this Court's tight schedule requiring the filing of briefing by the end of Friday, December 3, 2010, as announced in this Court's November 26, 2010 scheduling order.   ATS and the City cannot claim that Francis and Randall prejudiced them by delaying in intervening.

32.     *Second*, Francis and Randall are residents of Houston.  They supported the RLC ballot-petition City Secretary Anna Russell certified on August 24, 2010 and helped collect signatures.  They exercised their rights under the First Amendment and Article I, Sections 8 and 27 of the Texas Constitution to petition the people for redress of grievances.[3]  They oppose RLC systems – and ATS's abuse of the political system to foist them upon citizens who do not want them.  Their unique political interests are sufficient under Fed. R. Civ. P. 24(a)(2) to permit intervention because their interests are direct, substantial, and legally protectable.[4]

---

[3] *See, e.g., Sawmill Products, Inc. v. Town of Cicero*, 477 F. Supp. 636 (N.D. Ill. 1979) (discussing *Noerr-Pennington* petitioning); *Ex Parte Neill,* 32 Tex. Crim. 275, 22 923 (Tex. Crim. 1893).

[4] *See, e.g., Cajun Elec. Power Coop v. Gulf States Utils., Inc.,* 940 F.2d 117, 119 (5th Cir. 1988); *Brennan v. New York City Bd. Of Educ.*, 260 F.3d 123, 128-29 (2d Cir. 2001).

33.    *Third*, Francis' and Randall's interest in the outcome of the litigation will be impaired by an unfavorable disposition of this case.  Although the Mayor and the City Attorney acknowledged that City Council had a duty to place the RLC issues on the ballot on August 24, 2010, the Mayor and City Council have long opposed any limit on RLC revenue-raising systems and have recently expressed concerns about the election's effect on the City's finances.  *See* Kubosh Affidavit Exhibit 1.F, at 2 (the Mayor expressing her sympathy for Council Member Clutterbuck's opposition to placing the RLC proposition on the ballot) and 20 (the Mayor's statement to citizen Jill Laxley (*id.* at 19), that, "I think you'll find most council members agree with you in support of red light cameras….").

34.    Francis and Randall differ from the City because they reject the RLC rationale the City embraces.  The debate about RLC revenue-enhancement systems reflects an on-going political issue, not a legal issue.  In a democratic society, citizens are entitled to decide political issues in the voting booth.  Francis' and Randall's opposition to RLC revenue-enhancement systems does not represent some Quixotic tilting against windmills.  Arizona's voters banned speed cameras.  Voters rejected RLC systems in other jurisdictions, including College Station.  Opposition to RLC systems is a mainstream political issue reflected in the 2010 State Republican Party Platform, which condemns RLC revenue-raising systems.  As reflected in Randall Affidavit Exhibit 1.L, a true copy of the Republicans' 2010 Platform for Texas reads as follows:

> Banning the Use of Red Light Cameras – We oppose the manner in which alleged vehicle violations are documented and fines levied against

individuals without proof of their having been the driver of the offending vehicle and we call for a ban on Red Light Cameras in the State of Texas.

*Id.* at 4.   Randall shares the view that RLC systems unfairly impose liabilities on owners of cars for offenses committed by persons other than the car's owner, for example, spouses, children, co-workers, employees, and friends who borrow that vehicle.

35.   Randall and Francis and other members of the Kubosh Family believes that RLC systems endanger the public.   Their flash distracts drivers at intersections.  Slam-the-brake reactions among drivers who see them significantly increase rear-end collisions and other accidents at lights with cameras.   Drivers approaching an RLC intersection as the light turns yellow must make a split-second decision either to slam on the brakes and risk a rear-end collision, or accelerate through the intersection and risk running the red light, a speeding ticket, or both.

36.   Francis' and Randall's opposition to RLC systems reflects their awareness of many independent studies that show that RLC cameras make dangerous intersections more dangerous and provide only the illusion of safety.  A ten-year study of RLC systems by the Australian Road Research Board completed in 1995 concluded that "the installation of RLC [*i.e.,* red light camera systems] at these sites did not provide any reduction in accidents, rather there has been increases in rear end and adjacent approaches accidents…"  *See* Randall Kubosh Affidavit Exhibit 1.H, at 1.

37.   If the City was really interested in protecting the public from accidents at intersections, then it could easily improve public safety by increasing the length of the

yellow signal in traffic intersections by just one second. Cities can also increase the visibility of their traffic lights by making them larger and brighter.

38.     But traditional ways of improving public safety do not raise the kind of revenues RLC systems raise for cities such as Houston and companies such as ATS. The City is operating seventy (70) RLC cameras owned by ATS. The lure of easy money explains why the City chose to enact an RLC system rather than extend the length of its yellow light signal – something that would substantially reduce the number of intersectional accidents but not raise revenue for the City and ATS.

39.     Francis and Randall will fight hard, probably harder than the City, to defeat the ATS counterclaim. If they do not win, they will lose substantial time, energy, and money devoted to this political campaign. *See* the Affidavit of Randall Kubosh. Francis and Randall have much to offer this Court. They are familiar with the Texas Legislature's long history of attempting to regulate municipal use of RLC systems. They worked hard to collect signatures necessary to put the RLC issue on the ballot.

40.     Francis and Randall, who oppose the municipal use of RLC systems, would lose the liberty interests they seek to vindicate if the City loses this case, including the right to use the charter-amendment election procedures set forth in Chapter 9 of the Texas Local Government Code.[5]

41.     *Fourth*, there is a danger of inadequate representation in this case if the City is the only defendant. The City could fall on its sword, presenting an ineffective

---

[5] *See, e.g., Michigan St. AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997) (discussing the importance of presenting specific interests in connection with an intervention).

"Plaintiff" voice in this Court, so ATS can win while the City keeps the cameras and their revenue.   Where the party whose representation is said to be inadequate is the government, the applicant for intervention must demonstrate that its interest is in fact different from that of the government and that the interest will not be represented by the government.[6]

42.   Francis' and Randall's interests in defending the November 2, 2010 election results differ from the City's interest.   Francis and Randall's opposition to cameras will not be represented by the City or the City's attorneys.   Their interests and those of the City are not aligned.   The City will lose millions of dollars of passive-income revenue if it prevails against the ATS Plaintiffs and the voters approve the proposed charter-amendment banning RLC systems.

43.   The City, Mayor, and many Council Members oppose placing the RLC proposition, Proposition No. 3, on the ballot.   Yet they are the only parties defending the election result.   No matter the skill of the attorneys involved, a party who does not believe in a case is less likely to defend it with the rigor and resources necessary to secure a victory than parties who believe their case is just and true.

44.   A party with a strong financial incentive to lose a case may fall, conveniently, on its sword.   If the City fails to fight the good fight, the citizens who voted against RLC systems will lose.   This lawsuit, then, goes to the heart of the democratic processes the Legislature crafted to protect citizens of home rule municipalities in Texas.

---

[6] *Hopwood v. State of Texas*, 21 F.3d 603, 605 (5th Cir. 1994).

45.     Should the City pay damages to ATS under the termination provision of its contract.  Francis and Randall say no, but minimization of the City's damages is not their highest priority.   Even if the City pays damages to ATS, Francis and Randall want to end the use of RLC systems in Houston. The City, on the other hand, filed suit to avoid paying contractual damages under the termination provision of the City/ATS contract. The City's position differs strikingly from Randall and Francis's position on this key issue.

46.     Francis and Randall are prepared to cite numerous cases that show that a charter amendment election to reform governmental procedures and processes is not a retroactive law and does not violate constitutional protections against the impairment of contracts as found in Article I, Section 16 of the Texas Constitution.

47.     Fundamentally, this is a case about local politics.  The Republican Party of Texas, the Libertarian Party, and the Tea Party urged Houstonians to vote "No" to the City-drafted Proposition 3.  But other groups on the liberal side of the political agenda have also opposed RLCs.  In East Cleveland, Ohio, the group Black on Black Crime led efforts to gather signatures for an anti-RLC election.   In Cincinnati, Ohio, the anti-camera coalition included the National Association for the Advancement of Colored People (NAACP) and the Green Party. The American Civil Liberties Union (ACLU) also battled cameras in Iowa and Rhode Island.

48.     Quoting *Taxpayers' Ass'n of Harris County v. City of Houston,*[7] the Texas Supreme Court held that to protect the people of the city in the exercise of this reserved legislative power, such charter provisions should be *liberally construed* in favor of the power reserved.[8]   Intervenors ask this Court to protect the people's decision to reject the continued use of RLC revenue-enhancement systems in Houston.

CONCLUSION AND REQUEST FOR RELIEF. Intervenor and Counter-Defendants Francis and Randall Kubosh respectfully request this Court to permit them to intervene in defense of the City of Houston's August 24, 2010 order scheduling a November 2, 2010 election.  The City's voters decided, in the election booth, that they wanted to discontinue the use of Red Light Camera systems in Houston.  Intervenors request such other relief, at law or in equity, to which they may show themselves justly entitled.

---

[7] 105 S.W.2d 655, 657 (Tex. 1937)

[8] *Coalson,* 610 S.W.2d at 747 (emphasis supplied).

Respectfully submitted,

**THOMPSON & KNIGHT LLP**

By: /s/ David A. Furlow

**Of Counsel:**

**Morgan Gaskin**
State Bar No. 24055534
Federal I.D. No. 695462
**Matthew R. Reed**
State Bar No. 24046693
Federal I.D. No. 565387
Houston, Texas  77002
(713) 653-8643 (Morgan R. Gaskin)
**Morgan.Gaskin@tklaw.com**
(713) 951-5858 (Matthew R. Reed)
**Matt.Reed@tklaw.com**

**David A. Furlow**
**Attorney in Charge**
State Bar No. 07555586
Federal I.D. No. 3435
333 Clay Street, Suite 3300
Houston, Texas  77002
Telephone:  713-653-8653
Telecopier: 832-397-8253
**david.furlow@tklaw.com**

**ATTORNEYS FOR INTERVENOR
COUNTER-DEFENDANT RANDALL
KUBOSH**

## CERTIFICATE OF SERVICE

I certify that I served a true copy of the foregoing on opposing counsel, as set forth below, by the Court's electronic filing system on this 30th day of November, 2010.

Automated Traffic Solutions, Inc.
Andy Taylor and Amanda Peterson
405 Main Street, Suite 200
Houston, Texas 77002
Via Fax: 713.222.1855

City of Houston Attorney David M. Feldman
City of Houston Legal Department
900 Bagby, 3rd Floor
Houston, TX 77002
david.feldman@houstontx.gov

\_\_\_/s/_____
David A. Furlow

## CERTIFICATE OF CONFERENCE WITH OPPOSING COUNSEL

I certify that I conferred about this motion, prior to filing it, with counsel for the Plaintiff City of Houston and counsel for the Defendants ATS, on the 29th day of November, 2010. I called Plaintiffs' counsel, Andy Taylor and Amanda Peterson, at 1:15p.m. Amanda Peterson oppose this motion. I have not received phone calls on other responses to my inquiries. Since Francis M. Kubosh and Randall Kubosh oppose the relief that Plaintiffs and Plaintiffs' counsel seek, I must conclude that Plaintiffs oppose this motion for intervention.

I called the City's David Feldman and talked with him. David Feldman stated that the City would oppose an intervention but would take no position regarding the filing of an *Amicus Curiae* Brief.

\_\_\_/s/_____
David A. Furlow

<u>**Appendix 1**</u>:

**Intervenors Randall and Francis Kubosh's List of Exhibits**
<u>**Attached to and Incorporated by Reference in this Motion**</u>

**Exhibit 1**:   The Affidavit of Randall Kubosh.

**Exhibit 1.A**:   A true copy of a representative part of the petition City of Houston Secretary Anna Russell certified as being signed by more than 20,000 registered City voters, attached as Affidavit Exhibit A to the Affidavit of Randall Kubosh.

**Exhibit 1.B**:   A true copy of the charter-amendment election issue, as it will appear on the November 2, 2010 ballot in voting booths in the City, attached as Affidavit Exhibit B to the Affidavit of Randall Kubosh.

**Exhibit 1.C**:   A true copy of City of Houston Secretary Anna Russell's certification of a charter-amendment petition submitted pursuant to Texas Local Government Code Section 9.004 for City elections to then-Mayor Lee P. Brown and the City Council dated September 12, 2001 and concerning same-sex domestic-partner benefits.

**Exhibit 1.D**:   A true copy of City of Houston Secretary Anna Russell's certification of a charter-amendment petition submitted pursuant to Texas Local Government Code Section 9.004 for City elections to then-Mayor Lee P. Brown and the City Council dated October 1, 2001 and concerning special rail-projects.

**Exhibit 1.E**:   A true copy of City of Houston Secretary Anna Russell's certification of a charter-amendment petition submitted pursuant to Texas Local Government Code Section 9.004 for City elections to then-Mayor Lee P. Brown and the City Council dated October 25, 2001 and concerning voter approval before the City could increase revenue.

**Exhibit 1.F**:   A true copy of a transcript of the City Council's August 24, 2010 meeting, attached as Affidavit Exhibit C to the Affidavit of Randall Kubosh.

**Exhibit 1.G**:   A true copy of the December 17, 2007 Final Judgment in *Felix Michael Kubosh v. City of Houston*, No. 2007-1183, in the 127th Judicial District Court of Harris County, attached as Affidavit Exhibit D to the Affidavit of Randall Kubosh.

**Exhibit 1.H**:   A true copy of Lisa Falkenburg's article, "Lawyer on crusade over red-light cameras," *Houston Chronicle* (Aug. 18, 2010), City Section, 1, on

        Chron.com, available online at http://www.chron.com/disp/story.mpl/metropolitan/falkenberg/7159255.html

**Exhibit 1.I**: A true copy of Bradley Olson's article, "Red-light camera foes may be too late for referendum," *Houston Chronicle* (Aug. 9, 2010), City Section, 1, on Chron.com, available online at http://www.chron.com/disp/story.mpl/metropolitan/7146495.html.

**Exhibit 1.J**: A true copy of American Traffic Solutions, Inc.'s contract with the City of Houston to provide Red Light Camera revenue-enhancement systems for the City of Houston, executed on November 1, 2005, as certified by City Secretary Anna Russell.

**Exhibit 1.K**: A true copy of American Traffic Solutions, Inc.'s and Allen Russell's Original Petition suing The City of Baytown, Baytown City Secretary Leticia Garza, and Baytown Mayor Stephen Doncarlos in the 11th Judicial District Court of Harris County, Texas, attached as Affidavit Exhibit E to the Affidavit of Randall Kubosh.

**Exhibit 1.L**: A true copy of 2010 State Republican Party Platform, attached as Affidavit Exhibit G to the Affidavit of Randall Kubosh.

**Exhibit 1.M**: A true copy of a ten-year study of RLC systems by the Australian Road Research Board completed in February 1995, *Research Report ARR 261: A long term study of Red Light Cameras and Accidents*, attached as Affidavit Exhibit H to the Affidavit of Randall Kubosh.

502417 000011 HOUSTON HOUSTON_715635_1.DOC