UNITED STATES DISTRICT COURT     SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| City of Houston, <br><br> Plaintiff, <br><br> versus <br><br> American Traffic Solutions, Inc., <br><br> Defendant. | § § § § § § § § § § | Civil Action H-10-4545 |

## Opinion on Intervention

1.     *Introduction.*

      Francis Kubosh and Randall Kubosh have moved to intervene to join the City of Houston in opposing American Traffic Solutions's claim against the charter amendment that bans red-light cameras. Because the Kuboshes lack standing to defend the constitutionality of the election, they may not intervene.

2.     *Background.*

      In 2006, the city entered a contract with American Traffic Solutions, Inc., for a system to enforce stop lights by using cameras. Under the contract, Traffic installed 70 cameras at intersections and issued violations to owners whose cars ran red lights.

      In 2010, citizens including the Kuboshes petitioned the city for a charter-amendment by referendum. The initiative asked voters whether the city should continue to use the cameras. The city placed it – Proposition 3 – on the ballot, and citizens voted to discontinue their use. As a result, the city amended its charter, and it stopped allowing Traffic to issue notices of violation.

      A few days later, the city asked this court to declare what its contractual obligations were under the new charter. Traffic counter sued saying that the amendment was invalid. The

Kuboshes moved to intervene to support the city against Traffic's claim. Both Traffic and the city oppose their intervention.

3. *Standing to Intervene.*

An interested party may intervene in two ways – by right or by permission. By right poses a question of law; by permission is within the discretion of the court.

A right to intervene requires (1) an interest in the subject of the suit, and (2) an outcome that may constrain the interveners' ability to protect their interest. The interested party may not intervene, however, if an existing party adequately represents its interest. Fed. R. Civ. P. 24(a).

With court permission, a party may intervene if it has a claim or defense that shares a common question of law or fact with the main action. This decision is confided to the discretion of the court. Fed. R. Civ. P. 24(b).

4. *Elections & Consequences.*

People who are partisans of a proposition have an interest in the election's regularity that is distinct from the government's interest. When a question arises about the process of the election, the government that has used the questionable procedure is not going to challenge itself. Candidates, voters, parties, and advocates may sue to correct the mechanics of an election like printing ballots, counting them, wording propositions, allocating polling places, and certifying results.

In election contests on propositions, Texas requires that the court allow at least one intervention by an outsider to defend the election results. It has no parallel law for defending post-election challenges to validity. Tex. Elec. Code § 233.004 (Vernon 2009).

After a law is adopted, it may be eviscerated by a lack of executive enforcement or legislative funding. Post-election thwarting is politics, not law, unless it is independently illegal.

Once a proposition has become law, its enforcement can only be attacked by someone with a direct, material stake that is in immediate danger of injury. *See Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970) ("direct, substantial, legally protectable interest"). The converse is also true. If a law is not enforced, it cannot be attacked in court unless the person has suffered an effect that is distinct from the general population – an individual injury.

In America, statutes are commonly brought to court because an affected person wants to show that the law is beyond the authority of the government using it. For all governments,

the obvious limit on their authority is the United States Constitution. For the city of Houston, its power is constrained by the Constitutions of the United States and Texas, Texas statutes, and its charter and ordinances. Governmental regularity – limited power and reliable processes – is the essence of the American system and the engine of its success.

Even here, however, people may not challenge a law in court because it represents a wrong policy choice. The wisdom, error, or inanity of a law is a question of political judgment.

5. *Organizers, Activists & Dissenters.*

Governments do not work; people make them work. The people who run, listen, donate, watch, call, speak, write, vote, read, lobby, and otherwise take democracy seriously are critical. Their place will "never be with the cold and timid souls who know neither victory nor defeat."

On the other hand, a fund raiser for a candidate would not be allowed to join an election contest. A councilman who managed an ordinance through the council would not be allowed to join a suit to defend it when it is challenged in court.

6. *Adequacy.*

Having caused the charter's amendment, the organizers understandably want to defend it. They need not defend it as long as the city itself will rigorously and thoughtfully work to vindicate it. They question the city's commitment because of the potential for it to have mixed motivation.

They say that the city officials may sabotage the defense because of the campaign positions and budget effects. Both the mayor and city attorney opposed the adoption of the amendment. The mayor routinely executes laws that she actually opposed or thinks wrong. It would be a peculiar governor who was convinced that every Texas statute was sound; yet, governors execute those laws, even ones passed over their veto.

Every rule represents a policy choice that was based on preferences. Those preferences prevailed temporarily over other preferences. Having been out voted does not disqualify a person from exercising her authority under that law. An office holder surely has some responsibility to inform the public debate with her views on questions that pertain to her duties. The same reasoning applies to derivative officials like a city attorney and police chief. The practice of politics by administration officials does not equal dereliction of duty.

The organizers say that the mayor will sell her duty for the revenue the cameras would generate and to avoid paying the city's commitment under the contract. Having divergent preferences about policy is not a conflict of interests in the legal sense. The officials have to confront the electorate in eleven months. What they do in this case now may affect their prospects then. Both the Kuboshes and the city want to stop using the cameras. They have the same objective. *See Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996).

In Alaska, organizers can intervene because of state officers' opposition to the referendum; however, the state did not oppose their joining the case on its side. Beyond that major difference, the court's standard was based on a "possible adversity of interest;" "possible appearance of adversity;" a concern that "there might be misperception" of inadequate representation; and a conclusion that "[t]hat the suspicion may be unfounded does not make it less inevitable." Interest in Alaska apparently includes discordant opinions about policy. *Alaskans for a Common Language v. Kritz*, 3 P.3d 906, 914 (Alaska 2000).

Possibility is everywhere present always; cases must be grounded in a meaningful probability derived from actual facts. Partisan misperception may be inevitable without justifying adding parties to a case. The organizers may have a substantial psychic and financial investment in the amendment's adoption without having an interest in the case contesting its post-adoption validity. *See Brown v. Todd*, 53 S.W.3d 297 (Texas 2001).

The standard should be modestly low as an additional check of governmental power, but it cannot be lowered to unfounded suspicion and potential misperception like Alaska's mood-ring focus-group rule.

7.  *Friend versus Party.*

The issue of the amendment's validity does not require testimony or documents; the facts are known. It is a pure question of the interplay among the Texas laws on home-rule cities, Houston's charter and ordinances, and the Kuboshes' petition. Positions inadequately argued by the city may be brought to the court's consideration by the Kuboshes as friends of the court, and should the court perceived anything like abandoned duty, it would simply invite their intervention.

8.  *Liberty & Law.*

The organizers have one interest that is distinct from the city's. They do not want the city to truncate their liberty – their opportunity freely to politic whether by petition, speech,

pamphlet, or billboard. Nothing that this court has been asked to do by either side in this case would constrict liberty. The organizers have had their petition and vote about the cameras. They won. Tomorrow they will have those rights and others. U.S. Const. amend. I; Tex. Const., art. I, § 8, § 27 (1876).

This suit will simply determine whether the charter amendment has complied with all of the laws that govern its adoption and substance. An ordinance adopted by fewer than a quorum, for instance, is invalid, and a person who is directly affected may complain about its application to him. When the ordinance is voided because it is beyond the competence of the city to enact laws like that, free expression will not have been injured, rather ordered liberty will have been preserved.

9. *Conclusion.*

The Kuboshes may not intervene because they have not demonstrated an inadequacy of representation or an independent interest.

Signed on December 12, 2010, at Houston, Texas.

 

_____
Lynn N. Hughes
United States District Judge