| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

| | | |
|---|---|---|
| City of Houston, | § § § § § § § § § | |
| Plaintiff, | | |
| versus | | Civil Action H-10-4545 |
| American Traffic Solutions, Inc., | | |
| Defendant. | | |

## Opinion on Summary Judgment

1. *Introduction.*

The city of Houston held an election on a citizens' petition to amend its charter to disallow the use of red-light cameras. It passed.

The charter itself and Texas law limit the ability of citizens to initiate changes to the city's charter and ordinances. The nature of the proposition was to repeal a single ordinance about techniques for enforcing traffic laws. It was done beyond the time limit in the charter for repealing an ordinance. The charter is not amended by the election of November 2, 2010.

Enforcing traffic signals by cameras may be good policy, or it may be bad policy. This decision is not about wisdom or preferences. The court simply must enforce the rules for making policy choices by charter amendment or referendum.

2. *Background.*

In 2004, Houston adopted an ordinance to use cameras to record cars running red-lights.[1] It would use the photographs to collect penalties from the car owners. Texas allows

---

[1] Houston, Tex., Ordinance 04-1312, § 2 (Dec. 21, 2004).

cities to choose to use this technique to enforce traffic laws.[2]  Two years later, the city hired American Traffic Solutions to install 70 cameras at intersections. Traffic would administer the notices and collections, and the car owner would get a notice of civil violation – an invoice with pictures showing the car running a red-light.

After the cameras had been used for four years, and citizen opposition had grown, people organized and petitioned Houston for an election to amend its charter to disallow the use of the cameras. The city called a special election on the proposition for November 2010, coinciding with Texas's general election. Fifty-three percent of voters agreed that the cameras should not be used. The city certified the results and amended its charter to exclude the use of the red-light cameras.

Houston cancelled its contract with Traffic, instructing it to turn the cameras off and to stop work on existing violations. That day, the city asked this court to declare what its obligations are under the contract considering its new charter. Conversely, Traffic sued the city saying that the charter amendment is invalid. The initial step is for the court to construe the laws and apply them to the undisputed facts to determine the validity of the election.

3.  *Direct Legislation.*

The City of Houston is a political subdivision of the State of Texas. Houston is a "home-rule" city and has permission to adopt its own rules and its own structure – within limits.

While its origin is the section of the Texas Constitution that permits home-rule, the city's direct organic law is its charter.[3] The city council or a petition from the people may propose an amendment to the charter. It may be amended only by a vote of the people. When enough citizens have signed the petition to amend the charter, the city must submit it to a vote at a special election or at the next municipal election.[4]

---

[2] Tex. Transp. Code § 707.003 (Vernon 2007).

[3] Tex. Const. art. 11, § 5 (1912).

[4] Tex. Loc. Gov't § 9.004(a) (Vernon 2007).

Ordinances control the ordinary operations of the city. They are adopted by the city council, with the citizens having the opportunity to repeal them by petition and election. Since 1913, the charter has allowed citizens to petition for a referendum to repeal an ordinance. That opportunity is limited to thirty days after the ordinance is enacted.

The city and Traffic disagree about the character of the ballot proposition. The petitioners call it a charter amendment, and that is how the city treated it. Traffic says it is a referendum targeted to repeal a specific ordinance. The validity of the election depends on the nature of the proposition in its character and effect – not on what it is labeled.

4.  *Amendment or Referendum.*

On December 21, 2004, the city adopted the ordinance to use red-light cameras. The citizens had 30 days – until January 20 – to gather the signatures for a referendum to repeal it. No one did.

Almost six years after its adoption, people started a petition drive for a referendum to stop the city's use of red-light cameras. The petitioners did not call it a referendum – a proposition to repeal an offending ordinance. To evade the deadline on referendums, they called it an amendment to the charter. Presented with this mis-labeling, the council supinely ignored – over the voices of some of its members – their responsibility and put the proposition to the voters as an amendment to the charter.

The court's inquiry is limited to the character and effect of the election as ascertained from an obdurate reality – not from labels and press releases.[5]

A.  *The Proposition and a Principle.*

The ordinance allows the use of "photographic traffic signal enforcement systems in accordance with Chapter 707 of the Texas Transportation Code."[6]

---

[5] *See Ives v. The City of College Station*, No. 9-2877-85 (D. Tex. Dec. 3, 2009) (final judgment).

[6] Houston, Tex., Traffic Ordinances ch. 45, art. XIX, § 481 (2007).

The charter amendment disallows the use of "photographic signal enforcement systems against the owner or operator of a vehicle operated in violation of a traffic control signal, specified by Section 544.007(d) of the Texas Transportation Code . . ."[7]

Although the amendment is re-worded, the text of the proposition was taken directly from the ordinance. The ordinance takes advantage of Chapter 707 – using cameras for red lights – and the proposition refers to Section 544.007 of Chapter 544 – mandating stops at red lights. If passed, the proposition could do nothing in its operation except repeal the ordinance.

The city says that the amendment is broader than the ordinance because it includes this clause: "to civilly, criminally, or administratively enforce any state law or city ordinance [enforcing the laws about red lights]." Texas laws allows only civil enforcement by cameras; criminal enforcement by cameras is illegal. Administrative enforcement is civil. Both the ordinance and the amendment are about exactly the same thing.

The charter, like a constitution, structures the government; ordinances, like statutes, make policy choices for their operation. Charters create officers, specify election or appointment, prohibit types and levels of taxation, and similar elemental things. Ordinances set speed limits, reorganize departments, appropriate, and similar managerial things. Although this distinction may blur at the edge, charters and ordinances are different and must be distinguishable. The rules of Texas and Houston call for them to be treated differently.

Abraham Lincoln once asked: If Congress said that a goat's tail was a leg, how many legs would a goat have? Four. Calling a tail a leg does not make it so.[8]

Given its effect, the proposition is a referendum.

---

[7]Houston, Tex., Charter, art. IX, §23 (2010).

[8]*See* Edward Josiah Stearns, *Notes on Uncle Tom's Cabin* 46 (1853) ("Father," said one of the rising generation to his paternal progenitor, "if I should call this cow's tail a leg, how many legs would she have?" "Why five, to be sure." "Why, no, father; would calling it a leg make it one?").

B.   *Other Charter Changes.*

Of the 34 charter amendments that have been proposed since 1980, most of them have affected the city's structure. Eleven have been about offices and elections, nine on taxes, five on council procedures, three on city employment, two on city contracts, two on rail lines, one on zoning, and one on red-light cameras.

Only one amendment resembles the red-light referendum but not closely. Citizens once sought to amend the charter to require equality of opportunity in city employment. Although it did not pass, it would have had the effect of negating the several ordinances that have created hiring preferences while reinforcing constitutional principles.

C.   *Subject.*

Traffic says that citizens may not use a referendum to repeal an ordinance that affects public safety. The city charter says that it "shall have the power to enact and to enforce all ordinances necessary to protect life, health, and property." This grant of authority cannot be understood to exclude direct legislation by the people on these topics. Most ordinances carry a stated purpose that is an empty, emotional generalization of the public interest. No ordinance could be repealed if life, health, and property were excluded.

More technically, when the charter's semi-specification of the matters that only it may address is exhausted, nothing remains. Using Traffic's logic, citizens may never submit a referendum – direct legislation would not exist. The state and municipal rules creating the opportunity for people to initiate legislation are not empty.[9]

D.   *Contract.*

Traffic also says that the referendum is invalid because it interferes with its contract with the city. The city and its people have obligations under the contract, and they may decide to use their power in a way that contradicts their contracts. If a government breaches a contract, it must accept the consequences. Governments are not free to impair contracts, nor

---

[9]Houston, Tex., Charter, art. II, § 2(a) (amended 1913).

may they meet their responsibilities by taking the property of others except by general taxation or with compensation.[10]

Because the election did not compel the city to stop the cameras, the next phase of this case is to address whether the city will choose to withdraw its termination or to supply the court with clauses in the contract that otherwise allow it to be canceled.

5. *Conclusion.*

The proposition repealed an ordinance. Although the petitioners and city call it a charter amendment, it is a referendum. Its whole process was years outside the time that the rules of the city allow under these circumstances.

The deadline is short, but the people have an alternative, recurring way to repeal an offending ordinance. Since the referendum deadline passed, the city has held three general elections for the mayor and council. The same energy and organization that went into the effort to repeal the ordinance may be applied in future elections as an alternative to a referendum.

Those who favor repeal will react that this distinction is a legal technicality. In some sense, all law is a technicality. It draws lines and defines categories. It is the antithesis of passion and partiality. The Founders' definition of tyranny was arbitrary government. Timid or over-enthusiastic city officials can destroy regular government as easily as a king.

Signed on June 17, 2011, at Houston, Texas.

Lynn N. Hughes
United States District Judge

---

[10]U.S. Const. art. 1, § 10, cl. 1 (1787); amend. V (1791).