## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| *The City of Houston,* | § | |
| Plaintiff and Counter-Defendant | § | |
| | § | |
| versus | § | |
| | § | |
| *American Traffic Solutions, Inc.,* | § | ACTION NO. 4:10-cv-04545 |
| Defendant and Counter-Plaintiff. | § | |
| | § | |
| *Francis M. Kubosh and Randall Kubosh,* | § | |
| Intervenors and Counter-Defendants. | § | |

**AFFIDAVIT OF DAVID A. FURLOW, COUNSEL FOR *AMICI CURIAE* AND RANDALL AND FRANCIS KUBOSH REGARDING CITY OF HOUSTON/ATS CONTRACTUAL CLAUSES AFFECTING THE ENFORCEMENT/DAMAGES PHASE OF THIS SUIT**

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

Before me, the undersigned notary, on this day personally appeared David A. Furlow, a person whose identify is known to me. After I administered an oath to him, upon his oath, he said:

### QUALIFICATIONS TO PRESENT AFFIDAVIT TESTIMONY

1. "My name is David A. Furlow. I am over 18 years of age, of sound mind, and otherwise capable of making this affidavit. I have never been convicted of a felony. All facts contained in this affidavit are within my personal knowledge and are true and correct.

2. I am an attorney who has been licensed to practice law in the State of Texas since 1984. I have been licensed to practice in the U.S. District Court for the Southern District of Texas and in the Fifth Circuit since 1984, in the Eastern, Western, and Northern Districts of Texas since 1987/88, in the Seventh Circuit since 1991 and the Ninth Circuit since 1993, and in the U.S. Supreme Court since 1994. I represent Francis M. Kubosh and Randall Kubosh (the "Kubosh *Amici*") in their current capacity as *Amici Curiae* in this Court and as Appellants in the Fifth Circuit.

3.   I prepared this affidavit to authenticate readily-available, public-record materials these *Amici Curiae* ask this Court to judicially notice pursuant to Federal Rule of Evidence 201(d).  I am personally familiar with the materials authenticated below, as set forth below, because I copied them from the websites referenced below.

### *AMICI* RESPONSE TO THIS COURT'S DOCKET #78 REQUEST FOR CONTRACTUAL CLAUSES THAT WOULD ALLOW THE ATS/CITY CONTRACT TO BE CANCELED

4.   In this Court's June 17, 2011 Memorandum Opinion, Docket #78, this Court invited the City to raise additional contractual defenses to ATS' counterclaim. The "next phase of this case is to address whether the city will choose to withdraw its termination or to supply the court with clauses in the contract that otherwise allow it to be canceled," the Court announced.  *Id.* at 6.

5.   The City did not respond to this Court's invitation to present additional contractual arguments.  When almost three weeks had passed without further briefing from the City, I filed *Amici Curiae* Francis and Randall Kubosh's Supplement in Response to the Court's Memorandum Opinion Inviting Contractual Arguments from the City of Houston, now filed in this Court as Docket #90.

6.   The Kubosh *Amici* filed that supplement to make an argument the City could have made, namely, that the ATS/City Red Light Camera contract (the "Contract") is unenforceable against the city because the Contract violates Texas Transportation Code §707.003(b).   In that supplement, filed on July 7, 2011, the Kubosh *Amici* argued that the City's and ATS' amendment and restatement of the Contract in 2009, as reflected in this Court's Docket # 4-3, as filed on November 19, 2011, made the Contract unenforceable as a matter of Texas statutory law.  Amici argued that a ruling that the ATS/City contract is void would enable the City to cease operating its Red Light Camera system without incurring contractual liability to ATS.

7.   On July 7, 2011, the day they filed that supplement, the Kubosh *Amici* sent the City's counsel David Feldman a letter via e-mail and PDF delivery requesting that the City join the Kubosh *Amici* in presenting that argument to this Court.  *Amici Curiae* Exhibit 1 is a true copy of the letter my secretary Joyce Schmutzer sent to City Attorney David Feldman on July 7, 2011 after signing that letter, with my permission, on July 7, 2011.

8.   My letter pointed out that nothing in this Court's Memorandum Opinion, Docket # 78, nor this Court's Interlocutory Order, Docket # 79, compelled the City to return the ATS/City Red Light Cameras ("RLC") to operation.  *See Amici Curiae* Exhibit 1 at 1.  The Kubosh *Amici* then pointed out a clause, art. VI.D on page 23

of the ATS/City Contract, that supported an argument that the Contract was void as a matter of controlling Texas statutory law.

9.  *Amici Curiae* **Exhibit 2** is a true copy of my secretary Joyce Schmutzer's e-mail forwarding that letter to City Attorney David Feldman on July 7, 2011.

10.  The Kubosh *Amici* ask this Court to take judicial notice of its own e-docket under Federal Rule of Evidence 201(d), to confirm that the City has not filed any brief or otherwise raised the contractual-clause argument *Amici* asked the City to make between July 7 and July 81, 2011.

11.  Since the City has not made this contractual argument (which would undermine the City's ability to generate revenues by enforcing that City/ATS contract), the Kubosh *Amici* renew this request that this Court hold that the ATS/City Contract, as amended, is void.

12.  The Kubosh *Amici* request this Court to take judicial notice, under Federal Rule of Evidence 201(d), that the City of Houston's City Attorney, David Feldman, admitted that he had not made the argument the Kubosh *Amici* presented to this Court and asked him and the City to make on July 7, 2011. *Amici Curiae* **Exhibit 3** is a true copy of an accurate transcription of the colloquy between City of Houston Council Member Jolanda Jones and City Attorney David Feldman that occurred at the City of Houston City Council Meeting on July 12, 2011, as recorded on the City of Houston's chosen network for televising City Council meetings, HTV.

13.  I can attest that this *Amici Curiae* **Exhibit 3** transcription of the Jones/Feldman colloquy is accurate because I watched and listened to the City Council meeting as it appears on HTV for the July 12, 2011 meeting of the City Council, and watched and listened to it again as I finalized this transcript. This Court can confirm the accuracy of this representation by watching and listening to the video/audio broadcast of that City Council meeting by going to the HTV website and clicking "public speakers" on that web-page for the July 12, 2011 meeting at http://houstontx.city.swagit.com/player.php?refid=07122011-41 (last checked, July 18, 2011).

14.  *Amici Curiae* **Exhibit 4** is a true copy of the HTV website this Court can use to access that audio/video recording.

15.  *Amici Curiae* **Exhibit 5** is a true copy of the HTV website for the July 12, 2011 City Council meeting as it appeared online on July 18, 2011. That image accurately reflects, in black and white, the color image that appears when someone accesses the "public speakers" tab on the above-referenced City of Houston HTV website.

16.   The City Attorney's decision not to pursue the contractual argument discussed above is consistent with the Mayor's decision to turn the City/ATS Red Light Cameras back on, and to continue operating them under the terms of the City/ATS Contract (as amended in 2009), despite the interlocutory nature of this Court's June 17, 2011 Order, Docket #79, as reflected in Mayor Parker's admission that she is a supporter of the cameras at her July 6, 2011 Press Conference.

17.   The statements that Mayor Parker made about her intent to turn on and keep on the ATS Red Light Cameras at her July 6, 2011 Press Conference, demonstrate that the City is not zealously defending the Proposition 3 election result despite the Mayor's and City Attorney's statements to the contrary.

18.   *Amici Curiae* **Exhibit 6** is a true transcript of Mayor Parker's July 6, 2011 Press Conference, available in video format on the Internet at http://houstontx.city.swagit.com/player.php?refid=07062011-13 (last visited July 7, 2011).  I know because I personally oversaw the preparation of that transcript and personally corrected that transcript after listening and watching the video of that press conference time after time on the HTV website referenced above.

19.   On page 6 of that *Amici Curiae* **Exhibit 6** transcript, in the first paragraph, Mayor Parker admitted that, "I support the cameras and I'm not trying to hide that…"

20.   On page 8 of that *Amici Curiae* **Exhibit 6** transcript, in the first paragraph, Mayor Parker admitted that "we are going to – we have to juggle all of these responsibilities," a statement inconsistent with a claim of a zealous defense of the Proposition 3 vote.

21.   On page 8, at the bottom of the *Amici Curiae* **Exhibit 6** page, Mayor Parker admitted that, "This is an existing contract and we are honoring an existing contract."

22.   *Amici Curiae* **Exhibit 7** is a true copy of the image of Mayor Parker and City Attorney David Feldman, directly behind her and in front of the City's Seal, at Mayor Parker's July 6, 2011 Press Conference on the Internet.

23.   *Amici Curiae* **Exhibit 8** is a true copy of the City of Houston **News Release** from the Office of Mayor Annise Parker (June 6, 2011), available at http://www.houstongovnewsroom.org/go/doc/2155/1130827/ (last visited July 7, 2011) that I personally printed from the Mayor's Office website.  In the second paragraph of that release, Mayor Parker stated that, "I have decided the fiscally-prudent path to take is to turn the cameras back on while seeking a second chance for voters in the courts."

24.    *Amici Curiae* **Exhibit 9** is a true copy of the letter, without the attached exhibits, sent by American Traffic Solutions' Corporate Secretary and General Counsel George J. Hittner to City Attorney David Feldman on June 20, 2011, which is available in PDF form on the Internet at the ABC/KTRK-13 newsite at http://dig.abclocal.go.com/ktrk/ATS-COH%20LetterandAttachments.pdf    (last visited July 7, 2011).

25.    Nor did the City present several cases, after this Court entered its summary judgment on June 17, 2011, consistent with such a contractual voidness argument that suggesting that initiatives occurring after the enactment of an ordinance can repeal a previous ordinance.  The City could have then argued that ATS cannot complain of a charter amendment it agreed to in advance when it agreed to be bound by the Charter and Texas law.

26.    *Amici Curiae* submit that a party that signs a contract in which it agrees to be bound by state, federal and municipal law, including a city's charter, expressly agrees to be bound by all of that city's future charter amendments. In *Energy Reserves Group v. Kansas Power & Light*, 459 U.S. 400, 103 S. Ct. 697, 74 L. Ed. 2d 569 (1983), the Supreme Court noted that, "the contracts [at issue] expressly recognize the existence of extensive regulation by providing that any contractual terms are subject to relevant present and future state and federal law.  This latter provision could be interpreted to incorporate all future state price regulation, and thus dispose of the Contract Clause claim…" *Id.*, 459 U.S. at 416, 103 S. Ct. at 707, footnote omitted; *Interstate Marina Dev. Co. v. Cty. of Los Angeles*, 155 Cal. App. 3d 435, 448, 202 Cal. Rptr. 377 (1984) (a general lease provision making lessees subject at all times to ordinances of the county "arguably" authorizes adoption by county of rent control law subsequent to entry into lease agreement as simple matter of contract interpretation).

27.    Nor did the City cite *Rossi v. Brown*, 889 P.2d 557 (Cal. 1995) after this Court's June 17, 2011 Memorandum Opinion.  There, the California Supreme Court held that an initiative could be used to repeal a tax ordinance, even though the city charter prohibited referenda on tax ordinances.  The case arose after the City of San Francisco imposed a utility tax on residents and voters submitted an initiative repealing the residential utility tax prospectively.  Both the San Francisco charter and the California Constitution excluded tax measures from voters' power of referendum, but not initiative.  The issue before the court was whether that initiative was a valid use of the initiative process or an invalid attempt to do by initiative what they could not do by referendum.  Because the initiative was not retroactive, the court concluded that it was permissible.  The same rule applies here, where the Proposition 3 charter-amendment could only become effective prospectively, after City Council's November 15, 2010 canvassing of the vote. *See also Boyer v. Grady*, 269 N.W.2d 73, 77 (Neb. 1978) ("the initiative power,

which is to be liberally construed, may be utilized [to repeal an existing ordinance] where the voters attempt to do no more through the initiative process than the city council and mayor could do if they so chose."); *Sharpe v. Hitt*, 99 N.E.2d 659 (Ohio 1951); *Storegard v. Bd. of Elections of Cuyahoga Cty.*, 255 N.E.2d 880 (Ohio Ct. Com. Pl. 1969) (allowing an initiative to be used to repeal zoning ordinance).

28.    These *Amici* respectfully request this Court to consider these contractual invalidity clauses, arguments and authorities the City chose not to present to this Court.

Further Affiant Sayeth Not.

DAVID A. FURLOW

SUBSCRIBED AND SWORN TO before me, the undersigned notary, on this 18th day of July, 2011, by David A. Furlow.

Notary Public

PAMELA DENISE LEE
Notary Public, State of Texas
My Commission Expires
February 14, 2015

**THOMPSON & KNIGHT LLP**

Of Counsel:

|  |  |
|---|---|
|  | By:    */s/ David A. Furlow* |
| Matthew R. Reed | David A. Furlow |
| State Bar No. 24046693 | **Attorney in Charge** |
| Federal I.D. No. 565387 | State Bar No. 07555586 |
| Thompson & Knight LLP | Federal I.D. No. 3435 |
| 333 Clay Street, Suite 3300 | 333 Clay Street, Suite 3300 |
| Houston, Texas  77002 | Houston, Texas  77002 |
| 713-951-5858 | 713-653-8653 |
| 713-654-1871 Fax | 832-397-8253 Fax |
| matthew.reed@tklaw.com | david.furlow@tklaw.com |

**ATTORNEYS   FOR   *AMICI   CURIAE*
RANDALL AND FRANCIS KUBOSH**

## CERTIFICATE OF SERVICE

I certify that I served a true copy of the foregoing affidavit on opposing counsel, as set forth below, by the Court's electronic filing system on this 18th day of July, 2011.

Automated Traffic Solutions, Inc.
Andy Taylor and Amanda Peterson
405 Main Street, Suite 200
Houston, Texas 77002
Via the Court's E-Filing System

City of Houston Attorney David M. Feldman
City of Houston Legal Department
900 Bagby, 3rd Floor
Houston, TX 77002
Via the Court's E-Filing System
david.feldman@houstontx.gov

*/s/ David A. Furlow*
David A. Furlow

# THOMPSON & KNIGHT LLP

### ATTORNEYS AND COUNSELORS

DAVID A. FURLOW
SENIOR PARTNER
DIRECT DIAL: (713) 653-8653
EMAIL: David.Furlow@tklaw.com

THREE ALLEN CENTER
333 CLAY STREET • SUITE 3300
HOUSTON, TEXAS 77002-4499
(713) 654-8111
FAX (713) 654-1871
www.tklaw.com

AUSTIN
DALLAS
FORT WORTH
HOUSTON
NEW YORK

ALGIERS
LONDON
MEXICO CITY
MONTERREY
PARIS

July 7, 2011

<u>VIA FACSIMILE (832) 393-6463, E-MAIL (david.feldman@houstontx.gov) AND
CERTIFIED MAIL, RRR 7011 0110 0001 6934 6378</u>
Mr. David M. Feldman, City of Houston Attorney
Mr. Arturo Michel and Mr. Bertrand L. Porteau, II
Ms. Lynnette K. Fons
City of Houston Legal Department
900 Bagby, 3rd Floor
Houston, Texas 77002

Re:    Case No. 10-cv-4545; *City of Houston v. American Traffic Solutions, Inc.*; In the United
       States District Court for the Southern District of Texas—Houston Division)

Dear David:

On page seven of the Houston's Motion to Certify Permissive Interlocutory Appeal
(Docket # 86) (the "Motion to Certify"), the City asserts that "based on the district court's
opinion, Houston must turn the red-light cameras on - until or unless the decision is
reversed." That statement is erroneous.   I write this letter on behalf of Randall and Francis
Kubosh (the "Kubosh Intervenors") to ask the City to correct its erroneous statement in a filing
in Judge Hughes' court.

Neither the Court's opinion (at Docket # 78) nor the Court's order (at Docket # 79)
granting ATS' summary judgment compels the City to turn ATS' red light cameras back on. The
Court's order and opinion resolve a question of law, not a request of injunctive relief.
The district court's order is interlocutory. Judge Hughes even styled the order "Interlocutory
Order," so there it is, for all to read.  Even ATS' letter dated June 20, 2011, a copy of which is
attached to your Motion to Certify, states the City's "options."

In other words, the Court's order granting ATS' summary judgment is not final and the
City's liability is not fixed.  The case is not over.  The City can appeal Judge Hughes' decision, if
and when it becomes final and enforceable, without turning ATS' cameras back on.

Moreover, on page six of the Court's opinion, Judge Hughes invited the City to raise
additional contractual defenses to ATS' counterclaim. The "next phase of this case is to address
whether the city will choose to withdraw its termination or to supply the court with clauses in the
contract that otherwise allow it to be canceled."

The Kubosh Intervenors must point out a clause in the contract that the City should use to
cancel the contract.  The ATS contract, which the City and ATS amended and restated in May
2009, is "subject to the laws of the State of Texas . . . ." *See* ATS Contract at 23, art. VI.D.

502417 000011 HOUSTON 743212.1



EXHIBIT
1

Mr. David M. Feldman, City of Houston Attorney
July 7, 2011
Page 2

Case law consistent with this clause of the contract provides that "Persons or entities contracting with the governmental unit are charged by law with notice of the limits of their authority and are bound at their peril to ascertain if the contemplated contract is properly authorized." *See, e.g., City of Bonham v. Southwest Sanitation, Inc.*, 871 S.W.2d 765, 767 (Tex. App.—Texarkana 1994, writ denied).

The City should argue that the ATS Contract is void because it violates governing state law, namely, Section 707.003(b) of the Texas Transportation Code. That law states that the City may not agree to pay a red-light camera contractor a specified percentage of, or dollar amount from, each civil penalty collected. But that is exactly what the City did when it entered into the ATS contract in May of 2009.

Under the ATS Contract, as amended, ATS earns a fee based on the number of civil penalties collected. ATS can only be paid out of Collection Revenue, and ATS earns a fee for each Citation issued. The rate of the fee varies depending on the number of citations issued in a given month. Indeed, the contract provides that "[a]ll fees due to Contractor under this Agreement shall only be paid from Collection Revenue." *See* ATS Contract at 19, art. IV.A. "Collection Revenue" means "revenue collected solely from the issuance of Citations, less court fees and returned check fees, as defined by City policy." *See* ATS Contract at 5, art. II.

Under Exhibit G to the ATS Contract, titled Payments to Contractor and Service Level Performance Standards, section 2.1.2, ATS is paid a monthly "per citation fee." *See* ATS Contract, Ex. G., at 1, § 2.1.2. In particular, "the City shall pay Contractor a citation fee amount for each Citation issued." *See* ATS Contract, Ex. G., at 1, § 2.1.2. "This fee is dependent upon the number of Citations issued each month as identified in Section 10, Item 2(b), Contractor's Fees, below." *See* ATS Contract, Ex. G., at 1, § 2.1.2. The fee schedule in Exhibit G is designed in a way so that the fewer the number of citations issued, the more the per citation fee, and the greater the number of citations issued, the less the per citation fee.

Therefore, the Kubosh Intervenors request that the City take Judge Hughes up on his offer in his memorandum opinion. The Kubosh Intervenors ask the City to adopt and co-sponsor the Kubosh Intervenors' argument, as set forth in their July 7, 2011 *amici curiae* filing, in Judge Hughes' court and on appeal, that the City can cancel the ATS/City Red Light Camera contract because (1) that City/ATS contract is subject to the laws of the State of Texas, as the Contract states, and (2) the City had no authority to enter into a contractual agreement that violates section 707.003(b) of the Texas Transportation Code, and thus has no current authority to enforce that contract by operating a Red Light Camera system now.

Sincerely,

David A. Furlow

DAF/jns

**Furlow, David A.**

| | |
|---|---|
| **From:** | Schmutzer, Joyce |
| **Sent:** | Thursday, July 07, 2011 3:19 PM |
| **To:** | david.feldman@houstontx.gov |
| **Subject:** | City of Houston v. American Traffic Solutions, Inc.; In the United States Southern District of Texas |
| **Attachments:** | Ltr to City Attorney regarding Houston's Motion to Certify Permissive Interlocutory Appeal.pdf |

Please see correspondence in the above-referenced matter for your review and file.  Please let me know if you have any questions or need any further information.  Thank you for your attention to this matter.

Joyce Schmutzer, Legal Secretary
**THOMPSON & KNIGHT, LLP**
333 Clay Street, Suite 3300
Houston, Texas 77002
713.217.2840 Direct Dial
713.654.8111 Main
713.654.1871 Fax
joyce.schmutzer@tklaw.com



EXHIBIT
2

**A True Transcript of the Colloquy between City Council Member
Jolanda Jones and City Attorney David Feldman at the
City of Houston City Council Meeting on July 12, 2011,
on the HTV website, at http://houstontx.city.swagit.com/
<u>Regarding the Red Light Cameras Controversy</u>**

|  |  |
|---|---|
|  | Thank you Mr. Schoenbeck, we have Council Member Jones. |
| Ms. Jones | Thank you.  This is directed at City Legal.  Pleadings are public, correct?  Are pleadings public? |
|  | We have City Attorney David Feldman stepping up to the mic[rophone]. |
| Ms. Jones | Yes.  I don't want to use my time up all the way, so yes or no.  Are pleadings public?  Are pleadings filed in a lawsuit public? |
| Mr. Feldman | Of course they are. |
| Ms. Jones | Okay.  Have we made the argument in our pleadings that the amendment is void because it contravenes State law?  Have we made that argument?  Yes or no? |
| Mr. Feldman | No.  We made the contrary . . . we made the . . . |
| Ms. Jones | Did we . . . I'm sorry, I asked a specific question.  Um, did Judge Hughes' order say that the City had to turn on the cameras?  Yes or no. |
| Mr. Feldman | No. |
| Ms. Jones | Have we thus far used the termination for convenience out clause of... First of all, does the contract have a . . . termination for |

EXHIBIT

tabbies'

3

| | |
|---|---|
| | convenience out clause? Yes or no. |
| Mr. Feldman | I cannot answer that question yes or no, because the parties are taking differing positions on that in the litigation. We take the position that there is, ATS takes the position that there is not. |
| Ms. Jones | Did we not, when the red light camera vote happened, talk about a 120 day out clause at this very Council table? It seems like I recall that. |
| Mr. Feldman | I have no recollection. |
| Ms. Jones | Okay. And finally, can Council, yes or no, vote to turn the cameras off? |
| Mr. Feldman | No. |
| Ms. Jones | And we can't vote to turn the cameras off, why? |
| Mr. Feldman | The only person who would have authority to terminate the contract for convenience would be the Chief of Police. |
| Ms. Jones | I didn't ask about terminating the contract. I said, can City Council vote to turn off the cameras, irrespective of the contract? |
| Mr. Feldman | City Council could vote to repeal it's ordinance. |
| Ms. Jones. | Yes, so that could be on the agenda? |
| Mr. Feldman | You could vote to repeal the ordinance. |

| | |
|---|---|
| Ms. Jones | So is that a yes? |
| Mr. Feldman | It's not a question that can be answered with a simple yes or no. |
| Ms. Jones | If the Mayor wanted . . . |
| Mr. Feldman | Because you'd have to go through a mechanism to accomplish it. |
| Ms. Jones | If the Mayor wanted to put an ordinance to say we repeal whatever the ordinance is that had the red light cameras, could we do that?  Yes or no. |
| Mr. Feldman | Well you said if the Mayor . . . |
| Ms. Jones | I said, could we put . . . Every week we put ordinances on the agenda, and then we're asked to vote on them.   Can City Council, or can the Mayor, whoever puts stuff on the agenda, put an ordinance repealing that ordinance that enabled the red light cameras?  Yes or no. |
| Mr. Feldman | Yes. |
| Ms. Jones | Thank you. |
| | |



*Where Houston Watches and Change Happens*

| Home | What's On HTV | Community Outreach | Sponsorships-Media Kit | About Us | HTV Productions | Contact Us |

- Live
- City Council
- Council Commissions
- Job Search
- Specialty
- Series

# City Council `RSS`

[              ] Search or narrow [year ▼]

| Name | Date | Items | Duration | |
|------|------|-------|----------|---|
| City Council | Jul 13, 2011 | 7 | 2h 4m | Video |
| City Council | Jul 12, 2011 | 3 | 1h 15m | Video |
| City Council | Jul 06, 2011 | 11 | 2h 50m | Video |
| City Council | Jun 29, 2011 | 7 | 2h 42m | Video |
| City Council | Jun 28, 2011 | 5 | 2h 9m | Video |
| City Council | Jun 22, 2011 | 14 | 6h 12m | Video |
| City Council | Jun 21, 2011 | 6 | 2h 54m | Video |
| City Council | Jun 15, 2011 | 7 | 1h 39m | Video |
| City Council | Jun 14, 2011 | 6 | 3h 18m | Video |
| City Council | Jun 08, 2011 | 5 | 2h 21m | Video |
| City Council | Jun 07, 2011 | 5 | 2h 44m | Video |
| City Council | Jun 01, 2011 | 14 | 4h 9m | Video |
| City Council | May 18, 2011 | 5 | 1h 38m | Video |
| City Council | May 17, 2011 | 5 | 2h 49m | Video |
| City Council | May 11, 2011 | 4 | 55m | Video |
| City Council | May 10, 2011 | 5 | 2h 13m | Video |
| City Council | May 04, 2011 | 6 | 1h 43m | Video |
| City Council | May 03, 2011 | 4 | 2h 33m | Video |
| City Council | Apr 27, 2011 | 5 | 2h 3m | Video |
| City Council | Apr 26, 2011 | 5 | 2h 5m | Video |

1 2 3 4 5 6 7 8 9 Next >>

On Demand Video is provided as a service through a third party provider and is not meant to be presented as an official public record. The official audio recordings and written minutes of the City Council meetings are kept in the Office of the City Secretary. Public information requests should be directed to that office.

© 2008 copyright, City of Houston. All Rights Reserved



EXHIBIT

4

http://houstontx.city.swagit.com/                                                    7/18/2011

Case 4:10-cv-04545   Document 97   Filed in TXSD on 07/18/11   Page 15 of 31



LIVE

HOUSTON
CITY COUNCIL
July 12, 2011

00:02                    27:14

| Current | Agenda | Archive | Share | Subscribe |

▶ Presentations and Proclamations                     ⊞

▶ Prayer, Pledge and Roll Call                         ⊞

▶ Public Speakers                                      ⊞

Powered by Swagit.com © 2011

**Presentations and Proclamations**
Presentations and Proclamations

Duration: 27 min. 17 sec.

EXHIBIT

5

**A True Transcript of Mayor Parker's July 6, 2011 Press Conference
Regarding Her Decision to Activate the City of Houston/ATS
Red Light Cameras, as that Press Conference Appears at
http://houstontx.swagit.com/player.php?refid=07062011-13**

| | |
|---|---|
| Mayor Annise Parker | There are a number of items that I wanted to talk about today, but the most important of those is a public safety issue and I have asked Police Chief Charles McKellan and Fire Chief Terry Garrison to stand with me for this presentation.  These are the First Responders who see the accidents and injuries that occur on our roadways – as a result of those law violators who run red lights.<br><br>After much deliberation and consultation with members of counsel, with City Attorney and the City Legal Department, I have decided that the City will request the ability to appeal the ruling of Judge Lynn Hughes and while we are appealing his ruling, the red light cameras will be turned back on.  Those cameras will be monitored to assure that they are working properly and once that determination is made we will begin to issue tickets.  But the cameras are on now and will be on as we go through the appeal process.<br><br>The – I clearly understand the will of the voters – they voted to have the cameras removed, but a federal judge has ruled that that election process was invalid and because of that, we are in a dilemma.  Now, I spent so much time between a rock and a hard place I ought to be about this wide right now.  That is clearly the situation, once again.  The vendor, under our existing red light camera contract, is owed millions of dollars under that contract.  However, a federal judge has said that we have no right or no legal reason to end that contract prematurely.  So balancing the needs of the citizens to go through an election process and we made the right decision in allowing that process to go forward to be adjudicated in the proper venue, but also balancing the needs of the citizens and the taxpayers of Houston and realizing that we have already laid off nearly 750 City employees through a very difficult budget process that I can't, in good conscience, allow millions of dollars in exposure to ATS under this contract.  We have decided – I have decided – that we will turn the cameras on and we will ask the judge to appeal his ruling.  Now, this is not a matter of going around Judge Hughes, this is a matter of -- we |

1



EXHIBIT

_6_

|  | have to ask Judge Hughes – it is a permissive appeal – whether we can, in fact, appeal his ruling. But we are making that request and it is our intention as we work through this process to finally clarify what is permissible in our ballot process, the petition process that we allow citizens to use to either overturn an action of counsel or to place things before the citizens. So while this is painful going through it, I think in the future what we do will stand the City in good stead. Now, the contract with ATS, it is certainly my intention that before -- that a new contract is let or that contract be extended that we return to the voters and make our case to the voters, but also we are appealing the judge's ruling which is forcing us to turn the cameras back on. As we go through this new process, we are going to take advantage of what we have learned. One, I am going to ask the Chief of Police to analyze which intersections the cameras are in placed at and to make sure that those cameras are at the most dangerous intersections and that may mean that some cameras will be moved. But again, all cameras, all photo enforced intersections, have signs that say they are – the traffic is photo enforced so that we are not playing a game. We are not trying to sneak up on anybody – due notice to anyone – and of course, we all know that it is illegal to run a red light under any circumstances. Now, at the same time, I want to make sure that we answer the questions as to whether accidents increase or decrease at red light intersections and we are going to keep good statistics through this process. The burden of deciding when the actual ticket issuance begins will be on Chief McKellan and I am asking Chief Garrison, as we go through this process, because the police department can tell me where an accident happens but it is really the Fire Department that is going to be able to tell me the severity of the accidents at these intersections and they are both going to need to be a part of this process. Chief McKellan, I am going to ask you to explain a little bit about how the process works with the red light cameras. |
|---|---|
| Chief McKellan | Okay. Thank you very much, Mayor. Certainly, I have been a proponent of photo red light enforcement. It is more efficient. It is a force multiplier. And I do think it reduces injuries and saves lives from that stand point. As all of you know, traffic enforcement is one of those core services that the police department must engage in to keep the motoring public safe. And, in our process of monitoring the existing cameras that are |

|  | up right now, prior to them being shut down, traffic enforcement officers monitored these cameras and the violations. We are on the side of caution and all of the violations that these officers observed on the cameras – only about 60% of the violations that were actually where motorists received a citation. I haven't met anyone yet, during this process, for the public that agrees that running a red light is okay or safe. Everyone tells me running a red light is unsafe and it can cause injuries or death. So, if my responsibility is to do traffic enforcement and I have a piece of technology that can do that more efficiently then a police officer and objectively do it, then I think it is the right thing to do to keep the motoring public safe. And, I will emphasize that if you don't run a red light, you won't receive a citation and the cameras are our way to hold irresponsible drivers – responsible for their very unsafe behavior. Thank you. |
|---|---|
| Mayor Parker | I will repeat it is not the prerogative of City officials to decide or any officials in any level of government to decide which laws we want to obey and, you know which ones we don't. When this petition came to us last year, we did the right thing and accepted the citizen petition. When the ballots were cast, we did the right thing – we turned the cameras off. Now, we are in a different stage of the process where a judge has ruled that we had no legal basis to turn those cameras off because the election was invalid. So, now in protecting the financial interests of the City, and the millions of dollars of exposure that we have under this contract, the cameras are going to be turned on. We are going to continue to protect the rights of the citizens by appealing the judge's ruling. Are there any questions about this particular process? |
| 8:49 on the HTV website: A male person in the audience, based on his voice, who does not appear on-screen. | Mayor, you have repeated several times from the very beginning, that this petition and election ballot was had had that the [inaudible]. And, just from the very beginning, there were people who were skeptical about the statements that you made. At the same time, you had Mr. Feldman go and work his magic in the courts, knowing full well that his objective was to get those cameras back on, so that you guys could recoup that money. Now, the vendor itself is in Arizona, never turned the cameras off. They constantly have been monitoring those cameras ever since. Now, are you going to go after the violators that they found and recorded over the period of time that you claim that |

| | the cameras were supposed to be off and go after them as well as the back money that you claim is owed to the City because of the violations that were found prior to? |
|---|---|
| Mayor Parker | You've asked a lot of questions in there.  There have been no citations.  No citations issued since the cameras were turned off immediately after the election.  The cameras – the cameras were in place but there are no citations issued. We have not kept those records.  We do not intend to do anything with those.  We were in a good faith process asking the judge to allow us out of our contract without paying millions of damages to ATS.  Now, however, the judge has said that we can't just walk away from the contract with ATS because the election was invalid and we have millions of dollars of exposure to ATS.  After a period of testing of the cameras – because again – while those cameras have still been there and we assume that they are still operational – we want to make sure that they are accurate and that the timing on all of those cameras is correct.  After that testing period, we will begin to issue citations.  Only those new citations – there is nothing during the interim period – but these new citations will be fully valid citations.  At the same time, if you received a citation before the cameras were turned off, we are still looking for you for that money and we owe it to the taxpayers of Houston to make sure that we collect on debts owed to us and there is more than $20 million in unpaid red light ticket money that's out there.  We are going to continue to aggressively pursue that as we are all monies owed to the City of Houston. |
| 11:28        A female person in the audience (based on her voice). | Mayor, what are you going to say to the voters?  [Inaudible].  Do you say, hey, this is not a popular decision [inaudible]. |
| Mayor Parker | What am I going to do?  Politics is – government should be about doing the right thing at each step and I absolutely believe that we have done the right thing at each step of this process.  It is not a matter of selling it to anyone it is a matter of explaining where we are and what the next steps are in the process.  I am here today telling the citizens of Houston that the cameras will |

| | |
|---|---|
| | be turned on – they are turned on now.  And, we will begin to issue citations in the very near future.  But, at the same time, we are asking – or making an appeal to Judge Hughes – to allow us to appeal his ruling to a higher authority to protect the rights of the voters – those people who voted to turn off the cameras.  I don't know whether that appeal is going to be successful, but I also know that the City, at this point, can't afford the millions of dollars in liability that we have to ATS that started this process of litigation in the first place.  The fact that a judge has ruled that that election was invalid, forces us into a position.  If that election had been upheld, we would not be here today and those cameras would be off. |
| 13:07        A person        of indeterminate gender, based on the voice, asks        a question. | What do you say to your voters – to some of your critics – or critics of red light cameras – you say – I told you so, this is exactly how we thought it would play out.  It is exactly what has played out. |
| 13:30    Mayor Parker | Including some Council members who have said that – that is a very – it's very easy thing to say "Oh well Council should have ignored tens of thousands of petitions and just used – substituted their judgment for a political process that has been in place for decades to protect the rights of citizens to petition their government."  It is not the right of Council to decide, on their own, that an election process or a petition process is invalid. That is what we have the courts for.  We erred on the side of the citizens and we erred on the side of the right to petition government and I think we absolutely made the right decision.  Now, we deal with the results of that decision. |
| 14:11        A woman in the audience asks a question. | Mayor, you alluded to – that the contract runs out in 2014.  I'm curious, how that process would play out as far as would you put it up for a public referendum – using a charter amendment?  How would…. |

| | |
|---|---|
| Mayor Parker | No.   We are not going to go into that Charter Amendment process.  There are things that don't belong in the City charter, but I would ask council for the opportunity to place before the voters an initiative to decide whether to continue the process. Now, that assumes that we are denied an appeal, but we are still going to go through the appeal process. But, what I'm saying to everyone out there – and I support the cameras and I'm not trying to hide that – but to everyone out there who is unhappy that we are turning the cameras back on – that my commitment is – that when the contract expires, before we enter into a new contract, we are going to go back to the voters, if I have anything to do with it. |
| 15:12  A male person in the audience asks a question. | Mayor, you seem to be seem to be [inaudible] a date when citations will be issued again? |
| Mayor Parker | That is to the discretion of the police chief.  I don't know whether – you know, how long he thinks it is going to take to test the cameras, but certainly I would ask you to help us to tell the motoring public to start stopping at red lights now and then you won't have to worry about when the cameras come on. |
| 15:39,  a male person in the audience asks a question. | Mayor, you are placed in a precarious position in history.  That – you are going to go down as mayor who did not back the people's desires to turn these cameras off and keep them off. Irregardless, of whether or not a judge saw that the process that the City of Houston had petitioners go through was found invalid, alright? |
| Mayor Parker | If this job were easy, everyone would want to do this job.  I'm put in here to make these decisions.  I appreciate the forbearance of council members as we visited with members of council, Mr. Feldman, City Attorney, briefed Council members, got their input, but ultimately this is an administrative and legal decision and we are making it to preserve the rights of those petitioners who maybe unhappy that the cameras are being turned on, but |

| | |
|---|---|
| | we are doing what we need to do to make sure that the fact that they were able to vote on it in the first place is protected. |
| 16:45 A male person in the audience asks a question. | How was it protected? |
| 16:47 a female person in the audience, based on the voice. | I mean, there are know that there are – inaudible.  Are they all on or working at this second or [inaudible]. |
| Mayor Parker | The cameras have been ordered turned back on.  But we are – the company is responsible for notifying the Chief that they are all in working order and the chief has the ability to make sure that his folks, who are trained to monitor the cameras, to ascertain that they are working – working properly.  And, I don't know, Chief, if you want to add anything about how that is going to go. |
| 17:24,    Chief McKellan | Well, it is clearly a technical issue that I can't say, you know, the number of days that it will take to verify, but we certainly have to have the company to tell us that they are operating correctly and we want to verify that with our own, you know, traffic and transportation department to make sure that we can verify that.  So, it is a technical issue, but clearly we won't do any enforcement until I am 100% convinced that they are working and working properly. |
| 17:54, a male person in crowd | Do you have to be [inaudible] or can you just turn them back on? |
| Mayor Parker | We don't have to do enforcement to comply – to comply with the judge's ruling.  But, if we don't do enforcement, then we have the contractual issues with ATS and millions of dollars of exposure for the City and this is about making a – working |

| | |
|---|---|
| | through the legal process as we need to, but also dealing with our contractual obligations.  I mean, the reason that we went before the federal judge in the first place was to say – We have a contract with a vendor. The voters have told us to cancel that contract. We don't want to pay millions of dollars to that vendor for canceling the contract but it is responding to the will of the voters.  So, we are going to – we have to juggle all of these responsibilities.  I am not interested in any way in cutting off the debate, but my plane leaves in an hour, and I am – so I am going to be heading for the airport very shortly and I want to make sure that that if there are questions about anything else that we get to address them to.  But while these gentlemen are here, if there are any questions for the – either one of the chiefs or for me or the Legal or the City Attorney about this process, I am happy to answer that.  Hang on.  Any questions about [inaudible] |
| 19:15,           a woman in the audience. | Can you tell us [Inaudible] about filing the appeal [inaudible] Do you guys actually want to win the appeal [inaudible]?  Can you clarify that for us? |
| Mayor Parker | We continue to try to do the right thing in every step of this process and anyone who knows, Dave Feldman knows, that he doesn't – he likes to win. |
| 19:42     David Feldman | I have to say if you really want to see what our argument is, I will provide you with a copy of the request to the court and you can see that we are making every effort to convince the judge that No. 1, we should be given the permission to make this appeal and, as the Mayor said, it is a permissive appeal but this order was interlocutory nature and also setting forth the reasons why [we] believe his decision was wrong. |
| 20:06  a male person in the audience. | Mr. Feldman, will we still have the opportunity to [inaudible] under the contract until 2014? |
| Mayor Parker | No.  This is an existing contract and we are honoring an existing contract.  We are not expanding the contract.  We are not trying |

| | |
|---|---|
| | to sneak in, under – sneak something through. We will, however, examine – since we have this contract and we have a certain set number of cameras – where best to position those cameras, and some of those cameras may move. |
| Person          in crowd | Mayor, [inaudible,]…. What do you think of [inaudible]… |
| 20:40    Mayor Parker | I've never actually watched a shuttle launch and I hope that I have the opportunity to do so -- that it actually launches on time. But, it is a very bittersweet moment for me, for the folks at NASA, for their neighbors here in Clear Lake and Houston. This has been a great program and, like many of us, I grew up with the space program and watching this dream of space. But, NASA seems adrift and while the administration has said that there is a future for NASA and we will return to space with a heavy launch vehicle -- that has not been firmed up yet and so, I am supportive of the program. I want to be there to be part of this moment in history, but I also will continue the efforts – with the whole team of people who represent the business interests, the community, and our fellow employees at NASA and council member Sullivan who represents that area, to press the administration as to firm up the plans to not break up what we have at Johnson Space Center,. that we believe that competition can be good for NASA, but we also believe that competition needs to be where we have assembled the best and brightest to put us into space. Houston has always been the home of the astronaut core. We hope to continue as the home of the astronaut core but there has to be a clearly defined mission. We will continue to press the administration to firm up what that mission is. |
| Un-named person in the audience. | [Inaudible.]  Final mission? |
| Mayor Parker | It depends on a number of things, but I would love to be there and I hope I can. All of Houston supports NASA and I would encourage all Houstonians as this next flight launches, to say a prayer for the astronauts but to also resolve to pay attention and |

| | |
|---|---|
| | to press Washington to make sure that – what we have invested – we as an American people – what we have invested in the dream of space, that investment is protected. |
| Person in Crowd | Inaudible – laughing. |
| Chief Garrison | From a – thank you, Mayor.  From a response standpoint, we -- the Fire Department – the 4,000 men and women of the Fire Department, spend allot of time, money and energy trying to respond – trying to determine how we are going to best respond to vehicle accidents.  And, this – if you think about trauma in the City of Houston, this is our one area of trauma that we obviously respond to the most.   In 2010, we responded to over 10,000 vehicle accidents and about 30% of those we had to transport people.   Recently, we got some new devices that we can cut people out of cars, but -- what we would like to do, is not have to use any of that.  And, the same cameras that I see in this room are the same cameras that are on the corners of those intersections      where we are pulling out men, women and children out of those cars.  We would rather not do that.  So, for us, if we can participate in the mitigation process of eliminating or, at least, reducing the number of accidents at these intersections we would be extremely happy and will support any program that we can to make sure that we can do that.  There is probably not a worse call for our firefighters other than actually pulling somebody from a fire which happens seldom.  But, very frequently, we pull people from cars and it's just something that we would rather not do.  We understand that we are here to do it, but we would rather not do that. |
| Person          in crowd | Mayor Parker, you say you are going to perhaps redistribute the cameras.   Why were they not placed in the most dangerous intersections in the first place? |
| Mayor Parker | Well, of course, traffic changes over time -- that is the shortest and simplest answer.  But, you want to add to that? |
| Chief | That is a good idea.  We should always make sure that they are at |

| McKellan | our most dangerous intersections where there is a high rate of accidents or fatalities and that can change over time.  And, there was rationale – you know – to that end as why they were placed in the intersection that they are currently at – at this time. |
|---|---|
| Person          in crowd | So, they were deemed the most dangerous intersections at the time they were placed? |
| Chief McKellan | Yes.  They were. |
| Person          in crowd | Chief, last question from me.  Is it not true that each one of these intersections are franchised?  Meaning that the individual vendor had to pay x-number of dollars to be on each one of those corners and each one of those corners represents x-number of dollars not only to the vendor, but to the City of Houston [inaudible]… So each corner is not evaluated by based on the amount of money that we have generated through those cameras [inaudible]…\$40 to \$50 million. Each corner has a certain value, does it not? |
|  | No. |
|  | So, they don't have a value?  [People talking over each other]. |
| Inaudible | How much does the vendor have to pay to be on each one of those corners? |
| Mayor Parker | There is only one vendor. |
| Person          in crowd | I understand that.  I'm saying the vendor pays on each corner. Does he not?  Inaudible.  Talking over each other. |
|  |  |

| Dave Feldman | The -- we don't pay the vendor.  The vendor does not pay us. What happens is the vendor gets a percentage of the amounts collected from the facts as does the City as does the state of Texas. That's how it works.  Seriously. |
|---|---|
| Mayor Parker | And the -- if we place the cameras properly – at the most dangerous intersections – meaning the intersections with the highest number of red light violations, those would be the appropriate intersections to place those cameras.  They are not – that's the only reason that we evaluate the intersections. |
| Inaudible | Inaudible |
| Mayor Parker | I'm looking forward to some point during this year to be able to coast a little bit.  But it doesn't seem to be happening. |
| Inaudible | You need to coast …. [inaudible] |
| Mayor Parker | Thank you. |



**Mayor's Press Conference**
Mayor takes questions from members of the press.

Dur...

**EXHIBIT**
7



# City of Houston
# News Release
## Office of Mayor Annise Parker

**FOR IMMEDIATE RELEASE**
July 6, 2011

Contact: Janice Evans-Davis
janice.evans@houstontx.gov
832-393-0800 (o)
713-376-0525 (c)

Jessica Michan
jessica.michan@houstontx.gov
832-393-0804 (o)
713-834-7127 (c)

### City of Houston Seeks Permission to Appeal Red Light Camera Decision

Mayor Annise Parker today announced that the City will attempt to appeal a recent court ruling invalidating last fall's vote on red-light cameras. In the meantime, the red-light cameras will be turned back on today. Ticket issuance will resume after a short period of equipment testing.

"This is a difficult decision," said Mayor Parker. "I have a responsibility to represent the interests of the voters, but I also have a responsibility to abide by the judge's ruling. The City just went through a very painful budget process in which nearly 750 employees were laid off and park, library and health services were cut back. We simply don't have the millions they claim we would owe for violating the court decision and our contractual obligation to American Traffic Solutions (ATS). Therefore, I have decided the fiscally-prudent path to take is to turn the cameras back on while also seeking a second chance for the voters in the courts."

Mayor Parker emphasized the safety measures provided by the red-light camera program. ATS and the City are initiating a study to make sure the cameras are placed at the city's most dangerous intersections. As a result of this review, some cameras may be moved from their current locations to intersections with higher accident rates upon completion of this review.

In June, U.S. District Judge Lynn Hughes ruled last November's red-light camera referendum violated the City Charter and should not have been placed on the ballot. The ruling was based on a charter provision that mandates any challenge of a city ordinance by referendum must occur within 30 days of passage of the ordinance. City Council adopted an ordinance initiating the use of red-light cameras in 2004. Opponents did not mount their ballot challenge until 2010.

The district court decision is an interlocutory ruling. As such, the City must first ask Judge Hughes for permission to appeal to the U.S. 5th Circuit Court of Appeals. Permission is also required from the appellate court.

"It is not the prerogative of City Council to decide which laws it wants to follow," Parker said. "We had no choice in putting the referendum on the ballot last fall. However, we do have the ability to settle this question for future City Councils and the public."

####



EXHIBIT
8



**American Traffic Solutions™**

June 20, 2011

**_VIA HAND DELIVERY_**

Mr. David Feldman
City Attorney
City of Houston Legal Department
900 Bagby, 3rd Floor
Houston, Texas 77002

Re:   Contract #C62248, dated June 28, 2006, approved by City of Houston Ordinance No. 2006-567, as amended on May 29, 2009, approved by City of Houston Ordinance No. 2009-461, between the City of Houston, Texas ("City") and American Traffic Solutions, Inc., ("ATS") for "Photo Red-Light Camera Enforcement System and Services" (the "Contract").

Dear Mr. Feldman:

On November 15, 2010, the City of Houston gave written notice to ATS of the City's purported termination of its Red-Light Safety Camera program (the "Program") and filed suit against ATS in United States District Court for the Southern District of Texas that same day seeking a Declaratory Judgment as to the remaining contract obligations between the parties.  _See Attachments Nos. 1 and 2, respectively._  To this end, in your Complaint for Declaratory Judgment, you stated: ". . . [A] controversy has arisen between Houston and ATS with respect to the interpretation of certain terms and conditions of the Contract, and parties' rights and obligations, with regard to termination of the Contract _in light of the results of the election on the Proposition 3 measure._ Houston believes that it has acted reasonably and lawfully in terminating the Contract, but seeks a declaration with regard to its rights and obligations regarding the termination of the Contract under these circumstances." _Id._ (emphasis added).

I responded to your November 15 letter on November 24, explaining that the election was improperly called and urging the City to reinstate the program.  _See Attachment No. 3._  The City responded to my letter explaining that it would not have attempted to terminate ATS' contract but for the passage of Proposition 3. _See_ Attachment No. 4.  We have been steadfast in our position that the City did not have the legal authority to call a Special Election on Proposition 3.  In your August 23, 2010 memorandum to Houston City Council ("Council") and in your public testimony on August 24, 2010, you disagreed.  _See_ Attachment No. 5 and http://houstontx.city.swagit.com/player.php?refid=08242010-50, respectively.

Last Friday, United States District Judge Lynn Hughes ruled against the City and in favor of ATS.  Consistent with ATS' legal position, the Court ruled that this election should never have occurred in the first place because it was not actually a charter amendment, but rather an improper and untimely referendum.  Thus, the ban on red-light safety cameras in Houston was void and of no effect.  As a result of the Court's decision and the terms of our current Agreement, the City owes (and continues to accrue) significant monetary damages to ATS.

```
┌─────────────────────┐
│      EXHIBIT         │
│   tabbies    9       │
└─────────────────────┘
```

7681 E. Gray Road  •  Scottsdale, Arizona 85260  •  TEL: 480.443.7000  •  FAX: 480.607.0901
www.atsol.com  •  www.redlightcamera.com  •  www.platepass.com

Although we recognize that the City may continue to fight this issue in the district court and on appeal, in the meantime, as you have publicly stated, the City has two options. The City's first option is to cure its breach of the contract and effect the reinstitution of the Program. This option will not only save lives and increase public safety, but it will also limit the City's actual and consequential damages to those currently accrued. If the cameras are turned back on, ATS will work closely with the City to arrive at a mutual resolution to the damages incurred to-date. The City's second option is to continue the program's suspension while trying to overturn Judge Hughes' ruling. If the ruling is upheld, however, this option could result in the City eventually owing damages to ATS of as much as $20 million dollars or more.

Obviously, ATS cannot force the City to choose the first option rather than the second, as that decision is uniquely within the province of the City. However, there is no question that during the time the cameras have been off, public safety has suffered. Recent Houston Police Department statistics comparing intersection crashes with and without the cameras demonstrate just how much safer motorists are when the Program is in operation. By comparing crash statistics for the time period from November 15, 2009 to April 30, 2010, when cameras were operating, to the same time period one year later with cameras turned off, the results are clear: serious crashes at camera enforced intersections increased 137%, while total crashes increased by 350%. See Attachments Nos. 6 and 7. Turning red-light safety cameras back on will significantly enhance public safety, as well as protect the City from incurring additional exposure for continued breach of contract damages.

During the last 10 months since the decision was made to place Proposition 3 on the November ballot, ATS has expended significant time, energy and resources to react to a situation that was not of our making. Since the only reason for the City's purported termination of the Contract has been declared void by the Court, we hope that the City will elect to turn the cameras back on even while it continues to contest this ruling. Unless we hear otherwise from you, we are taking steps to reinstate, fully functionalize and resume processing red-light violations for all currently installed City of Houston red-light safety cameras beginning at 12:01a.m. on August 1, 2011.

I look forward to hearing from you at your convenience.

Very truly yours,

George J. Hittner
Corporate Secretary and General Counsel

ATS   American Traffic Solutions, Inc.